### BURTON *v.* CALAWAY.

| 20 | 469 |
| 135 | 313 |

PRACTICE.—Where the verdict and judgment are clearly right on the evidence, this Court will not inquire whether the instructions of the Court below were strictly correct or otherwise.

ACTION—TRESPASSER.—Where a person, in the first instance, acts under an authority vested in him by law, and afterwards abuses it, or fails to comply with the terms and conditions on which it was granted, he must be deemed a trespasser *ab initio.*

APPEAL from the *Madison* Circuit Court.

WORDEN, J.—This was an action of replevin for a steer, brought by *Calaway* against *Burton,* before a justice of the peace. The suit was commenced on the 1st of *June,* 1859. The property was not delivered to the plaintiff under the writ, but on the trial of the cause in the Circuit Court, he had judgment for its value.

The errors relied upon for a reversal are supposed erroneous instructions, given by the Court to the jury. We have not examined the instructions with that care which they would have required, had the case been doubtful upon the evidence. The verdict and judgment are so clearly right

upon the evidence, that we think it immaterial whether the instructions were strictly correct or otherwise. The instruc-tions had reference to the duty of the taker up of an estray animal, and we shall see from the facts in the case, that the defendant was not prejudiced, although the Court below may have fallen into some error in that respect.

The important facts in the case, and they are established beyond doubt, are, that the steer in controversy was the prop-erty of the plaintiff; that in the fall of 1858, he was running at large; that on the 2d of *December*, 1858, the defendant, professing to be acting under the estray law, took him up as an estray, as will appear from the following affidavit, made by him before a justice of the peace:

" *George Burton* swears that the marks, brands, or appear-ances of the estray steer, that he took up on the 2d day of *December*, 1858, have not been changed by him nor any other person, to his knowledge, since the same became estray."

Afterwards, on the 18th of *December*, 1858, the steer was duly appraised at the sum of 12 dollars. On the 2d of *June*, 1859, the defendant reported the steer to a justice of the peace as not having been claimed and proven, and the justice issued his warrant to a constable, for the sale of the animal. The constable having advertised the steer for sale, on the day fixed therefor, called on the defendant and demanded him, but the defendant would not give him up, and the con-stable not finding the steer, no sale was made. Afterwards the defendant sold the animal at private sale, and so far as appears, retained the proceeds.

The statute requires that animals estray, other than horses, mules, or assess, the appraised value of which exceeds 10 dol-lars, not claimed and proven within six months after taking up, shall be reported by the taker up to some justice of the peace of the proper township, within five days after the ex-piration of the time herein specified. The justice is there-

Burton *v.* Calaway.

upon required to issue his warrant to a constable for the sale of the property. The constable is required to sell the property, after giving the required notice, and return the order and the proceeds of the sale to the justice, retaining a dollar for his services; and the justice is required to pay the proceeds to the county treasurer after deducting a proper amount to be paid to the taker up, and 50 cents for his own fee. 1 R. S. 1852, p. 277, secs. 8 and 9.

It will be seen that the defendant acted in plain and open violation of the law, in refusing to deliver up the animal to the constable for sale, and in afterwards selling it himself at private sale. He undertook to justify his taking and detention of the steer under the provisions of the estray law, and yet acted in open and palpable violation of that law. It is clear upon principle and authority that his disregard of the law, in the particulars above indicated, makes him a trespasser *ab initio.* And inasmuch as he must be regarded as a trespasser from the beginning, it is not material to inquire whether, up to the 1st of *June,* 1859, when this suit was commenced, he had complied with the law or not. The property was not delivered to the plaintiff by virtue of the writ of replevin, but continued in the possession or under the control of the defendant. If he wished to justify his taking of the steer under the estray law, it was as much his duty to comply with the law after the commencement of this suit as it was before. The commencement of this suit did not absolve him from the duty of delivering up the steer for sale, nor did it justify him in selling the animal himself. If it be urged that the plaintiff must have had a good cause of action at the time he commenced his suit, the answer is that he had such cause of action, the subsequent conduct of the defendant showing that he was all the time a trespasser in intermeddling with the steer. The following extract from Broom's Max. p. 221, will place this matter in a clear light:

"The law, in some cases, judges of a man's previous intentions by his subsequent acts; and on this principle, it was decided in a well known case, that if a man abuse an authority given him by the law, he becomes a trespasser *ab initio;* but that, where he abuses an authority given him by the party, he shall not be a trespasser *ab initio.* The reason assigned for this distinction being, that when a general authority or license is given by the law, the law judges by the subsequent act, *quo animo,* or to what intent the original act was done; but when the party himself gives an authority or license to do anything, as to enter upon land, he can not for any subsequent cause, convert that which was done under the sanction of his own authority or license, into a trespass, *ab initio;* and in this latter case, therefore, the subsequent acts only will amount to trespass.

For instance, the law gives authority to enter a common inn or tavern, in like manner to the owner of the ground to distrain damage-feasant, and to the commoner to enter upon the land to see his cattle.   But, if he who enters into the inn or tavern commits a trespass, or if the owner who distrains a beast damage-feasant works or kills the distress, or if the commoner cuts down a tree, in these and similar cases the law adjudges that the party entered for the specific purpose of committing the particular injury, and, because the act which demonstrates the intention is a trespass, he shall be adjudged a trespasser *ab initio;* or, in other words, the subsequent illegality shows the party to have contemplated an illegality all along, so that the whole becomes a trespass." *Vide* also, upon this doctrine *Jarrett* v. *Gwathmey,* 5 Blackf. 237.

This doctrine has been repeatedly applied in cases similar to the present.   Thus in the case of *Sherman* v. *Braman,* 13 Met. 407, it was said:   "The defendant having, in the first instance, acted under an authority vested in him by law, and afterwards abused it, or failed to comply with the terms and

conditions on which it was granted, must be deemed a tres-passer *ab initio.*" To the same effect are *Coffin et al.* v. *Field et al.*, 7 Cush. 355; and *Morse* v. *Reed*, 28 Maine 481.

*Per Curiam.*—The judgment below is affirmed, with costs.[1]

*W. R. Pierse, H. D. Thompson,* and *R. N. Williams,* for the appellant.

*Walter March,* for the appellee.

(1) Petition for rehearing overruled, *August* 26, 1863.