RICH ET AL. *v.* JOHNSON.

TRESPASS.—*Conversion.—Principal and Agent.—Sale by Agent in Violation of his Instructions.—Harmless Evidence and Instruction to Jury.—Instruction Assuming Fact.*—The owner of certain personal property placed the same by itself, without the knowledge or consent of A., on premises belonging to the latter, intended by him exclusively for the delivery of personal property of that class, which B. was delivering to him by virtue of a special contract between them. Such owner instructed C., who was filling a like contract between himself and B., not to sell or deliver such property to either A. or B., without receiving the pay therefor; but C., without being paid therefor, sold and delivered the same to B., informing him of the owner's direction in relation to the pay, and B., pursuant to such contract with A., who had no notice of the owner's claim, delivered the same to A., and received pay therefor. A. afterward, with notice of the owner's claim, shipped such property to a distant point and converted the same to his own use, whereupon the owner commenced an action against him for damages for trespass.

*Held*, that the title to the property remained in the plaintiff; that C. was, at most, a special agent, and had exceeded his authority; and that the defendant was liable.

Rich *et al. v.* Johnson.

*Held,* also, that evidence of a statement made by C. to B., in A.'s absence, as to the plaintiff's direction in relation to the pay, though immaterial, was harmless.

*Held,* also, that an instruction to the jury, incidentally alluding to " the plaintiff's title" to the property, assumed the existence of no fact necessary for the plaintiff to prove.

*Held,* also, that an instruction more favorable to the party complaining thereof than is warranted by law is harmless as to him.

SAME.—The placing of the property on the premises of the defendant, without his knowledge or consent, was a mere trespass committed by the plaintiff, and did not constitute a delivery to the defendant, and possession thereof so remained in the plaintiff as to enable him to maintain an action of trespass *de bonis asportatis.*

SAME.—*Power of Agent.— Notice to Purchaser.—Custom.*—The agency of C. in such case was, at most, a special agency, limited by the instruction of the plaintiff; and in any event, in the absence of a custom to the contrary, it was his duty to sell for cash only, without any instruction so to do from the plaintiff, and of that the purchaser was bound to take notice.

From the Jackson Circuit Court.

*J. B. Brown,* for appellants.

*B. H. Burrell* and *F. Emerson,* for appellee.

WORDEN, J.—This was an action by the appellee, Johnson, against Jonah Rich, Horace Smitkin and William E. Gibson.

The complaint was as follows :

" The plaintiff complains of said defendants, and says, that the said defendants unlawfully took and carried away, and converted to their own use and benefit, twenty thousand oil-barrel staves, the property of the said plaintiff, of the value of four hundred dollars, which staves, at the time they were so unlawfully taken and carried away, were situate in the county aforesaid ; that said plaintiff was damaged thereby in the sum of four hundred dollars, for which he demands judgment," etc.

Answers in denial; trial by jury; verdict and judgment for the plaintiff, over a motion by the defendants for a new trial.

The causes assigned for a new trial were the following :

" 1st. The verdict of the jury is contrary to law.

"2d.   The verdict of the jury is not sustained by sufficient evidence.

"3d.   The damages awarded by the jury are excessive.

"4th.   The error of law occurring at the trial, and excepted to at the time by the defendants, in this, that the court erred in giving to the jury, of its own motion, instructions from one to five inclusive, and in giving each of said instructions; and to the giving of each and all of said instructions, the defendants at the time excepted.

"5th.   Error of law occurring at the trial of this case, and excepted to at the time by the defendants, in this, that the court erred in admitting in evidence, over the objection of the defendants, the following evidence, to wit, the evidence of Charles W. Conner, as follows: 'The day that Gibson received the staves from Conver, and before Gibson had arrived, I told Conver that those staves belonged to Mr. Johnson, and that he must not turn them over to Gibson until they were paid for.'   Also the testimony of Thomas W. Brown, which is as follows: 'On the day Gibson was to receive the staves, I heard Conner tell Conver that he must not turn over the staves to Gibson until Mr. Johnson was paid for them.'   Also the testimony of John W. Arthur, which is as follows: 'I heard Conner tell Conver, on the day that Gibson received the staves, that he must not turn over the staves to Gibson until Mr. Johnson was paid for them.'   To the admitting in evidence of the foregoing statements of each and all of said witnesses, the defendants at the time excepted."

The following facts may be gathered from the evidence in the cause:

The defendant Gibson had a contract with John Conver, by which Conver was to deliver to Gibson three hundred thousand staves.   Conver also had a contract with Charles W. Conner, by which Conner was to deliver to Conver one hundred thousand staves, to be delivered at Gibson's stave yard in Ewing.   The staves which Conner

was to deliver to Conver were intended, and did in fact go, to make up the quantity which Couver was to deliver to Gibson. While the above contracts were in force, and not fully performed, Johnson, the plaintiff, made the staves for which the action was brought, upon his own land, and caused them to be placed in Gibson's stave yard, above mentioned, without any consent thereto on the part of Gibson, so far as the evidence shows. Gibson had the yard exclusively for those who had contracts with him for the delivery of staves to him, and no one save those who had such contracts had a right to place staves there. Johnson's staves were piled separate from, and not mixed with, other staves. He expected to sell them to Gibson or Conner. There was no evidence that he ever did sell them himself to Conner or any one else, or that he ever got any pay for them.

While the staves were thus in Gibson's yard, Conver turned them over to Gibson, in discharge of his contract, and received pay therefor from Gibson, the latter having no notice of Johnson's claim.

There is evidence tending to show that Conver bought the staves of Conner, but it fails to show that he paid him therefor. While the staves remained at Gibson's yard, and before they were shipped, Gibson had notice of Johnson's claim, and that he was not willing that the staves should go until he was paid therefor. Thereupon Gibson caused the staves to be shipped to himself at Aurora. Gibson was present at the stave yard when the staves were turned over by Conver to him, and it was on that day that Conner told Conver, according to the evidence objected to, that the staves belonged to Mr. Johnson, and that he must not turn them over to Mr. Gibson until they were paid for.

There was some evidence from which it might, perhaps, have been inferred, that Johnson had constituted Conner his agent for the purpose of making sale of the staves. Thus, he said in his evidence:

" I told Charley Conner, that day in the forenoon," (the day the staves were turned over to Gibson,) " not to put the staves in to Gibson unless I got my money." .

We deem it unnecessary to say any thing more in respect to the evidence of what Conner said to Conver, which was objected to, than this, that we can not see how it could in any manner affect the legal merits of the case.

It could have worked the appellants no possible harm, as it was entirely immaterial whether the statement was made by Conner or not. If a technical error was committed in admitting the evidence, it was a harmless error, for which the judgment should not be reversed. We think it could have had no influence whatever with the jury in passing upon the facts upon which the case must rest. If Johnson never sold the staves, either in person or by agent, the title still remained in him, and Gibson became liable to him for their value when he removed them from the yard, and shipped them away to Aurora, thereby converting them to his own use. The fact that Johnson placed the staves in Gibson's stave yard did not make them Gibson's staves, nor did it authorize him to ship them away, and thus deprive Johnson of his property. On the other hand, if Johnson, either by himself or agent, made a valid sale of the staves, by which the title passed, he had no right of action against Gibson for shipping them away. In either event it would be entirely immaterial whether the conversation took place; and, if it took place, it could do neither party any good or harm.

We do not find in the brief of counsel for the appellant any objection to the fifth charge given, and it will not be further noticed.

The first to the fourth inclusive are as follows:

" 1st." (After stating the issues,) " If the jury find from a preponderance of the evidence, that the plaintiff was the owner of the staves in controversy in this suit, and

that he never. parted with the property in such staves; that the defendants bought the staves of another person than the plaintiff, in good faith, and without notice of plaintiff's title, but that, before the removal of the staves from where the plaintiff piled them in the stave yard, the defendants had notice of the plaintiff's title, but, notwithstanding such notice, the defendants removed such staves and carried them away, you should find for the· plaintiff; and the measure of·his damages should be the· value of such staves at the time of such removal, together with legal interest to this time.

"2d. If the jury should find by a preponderance of the proof, that Conner was the agent of the plaintiff for the management and sale of the staves in controversy, and that plaintiff instructed said Conner not to part with the· staves until the money was paid for them, then if you find he, Conner, even did agree to the delivery of the staves to the defendants or to any one else, without the payment of the money, said Conner exceeded his authority, and the plaintiff was not bound by his act in thus delivering the staves without first receiving the price for which they were sold.

"3d. If the jury find that the plaintiff called on Conner to point out to him where he should pile his staves, and Conner pointed out where they were to be piled, and plaintiff accordingly had them piled there, this simple· fact would not constitute Conner plaintiff's agent. But, if plaintiff at the time authorized Conner to sell them for him, but not to sell them except for cash, and not to let them go except for cash, then Conner would be the agent for plaintiff, but would be limited in his power to the precise terms named, and could not sell the staves in any other way or upon any other terms.

"4th. If the jury shall find by a preponderance of the evidence, that the defendant Gibson bought the staves. in controversy from another person than the plaintiff, in good faith, without any notice of plaintiff's title, and that

he removed them from the yard before he had any notice of the plaintiff's title, and that no demand was made of defendants for the property before this action was commenced, then you should find for the defendants in this form of action."

We are not prepared to say, that the fourth charge was not more favorable to the defendants than they were entitled to, on the subject of the necessity of a demand before suit; but of this the defendants could not complain, and we make no decision on the point. The objection urged to the charge is, that it assumes that the appellee had the title to the staves. We are of opinion, however, that the charge is not open to the objection made.

The point of the charge is as to the necessity of a demand before suit, in the case supposed, and the plaintiff's title is only mentioned incidentally, and in such a way as that the jury could not have understood the court as intimating, that, in point of fact, the plaintiff had a title to the property.

We return to the first charge, in respect to which we need not determine whether it is not more favorable to the defendants than they could ask, in making the plaintiff's right to recover, in the case supposed in the forepart of the charge, depend upon notice to the defendants' of the plaintiff's title, before they removed the staves.

If the charge was erroneous in this respect, the defendants, the appellants herein, can not complain thereof.

The objection to the charge, as we understand the elaborate brief of counsel for the appellants, is, that it informs the jury, that, on the facts hypothetically put in the charge, the plaintiff could recover in this action. It is claimed that the action is trespass *de bonis asportatis*, and that it will not lie where the plaintiff has parted with his possession, although he may not have parted with the property in the goods.

It is claimed by counsel, that, when Johnson placed the staves in the stave yard of Gibson, he so far parted

with the possession as that he could not maintain an action of trespass *de bonis asportatis* for taking and carrying them away, but that he must resort to trover or other action to obtain a remedy.

We do not think, however, that Johnson, by placing the staves in the stave yard of Gibson, parted with his possession at all. He had no right or authority from Gibson to place them there, and Gibson did not receive them when they were placed there. He was a mere trespasser on the ground of Gibson when he placed the staves thereon. Gibson would have had the right to remove the staves from his yard, placing them in some reasonable place, so that the plaintiff could take charge of them. In doing so, he would not have been guilty of a trespass. But, when Gibson not only removed the staves from his yard, but shipped them away to a distant point, for his own use, he abused the authority which the law conferred upon him to remove the staves from his premises, and he became a trespasser *ab initio. Burton* v. *Calaway,* 20 Ind. 469. Conceding, therefore, the action to have been trespass *de bonis asportatis,* it was well brought, and the objection urged to the charge is without just foundation.

It is claimed by the appellants, that the second and third instructions misstate the law on the subject of agency; that the agency of Conner was a general agency; and that a person dealing with him as such would not be bound by the instructions given by his principal, unknown to the party thus dealing. It would seem that Conner, if he was the agent of Johnson for the sale of the staves, was a special, and not a general, agent. The agency was for the sale of one particular piece of property, the lot of staves, and this would seem to be a special agency.

But, supposing that Johnson had given Conner no instructions as to whether he should sell on credit or for cash, but had simply authorized him to sell the staves, the law would imply that he should sell for cash only, in the absence of any custom to the contrary, which was not

shown in the case. The rule applies, we think, to the sale of a particular, specific piece of property, whatever may be the rule in case of an agency for numerous sales in the general course of business.

Story says: "Thus, for example, by the usage of trade, a sale of goods may ordinarily be made by a factor on credit; but, by the like usage of trade, a sale of stock by a broker is always understood to be a sale for ready money. Hence, if a broker should sell stock on a credit, the sale would be invalid; and the principal would be entitled to recover it back." Story Agency, sec. 226.

In Wharton Agency, sec. 192, it is said: "As the usage of a particular business at a particular place is supposed to be incorporated in the contract, if the usage is for sales under the particular circumstances to be made on credit, the agent is justified in complying with this usage if he use due precaution as to the vendee. It is otherwise when there is no such usage."

And, again, the same author, at sec. 740 of the same work, says: "No doubt it is stated as a general rule that a factor must sell for cash; though even by Chancellor KENT, who expresses himself to this effect most unequivocally, it is admitted that the factor may 'sell in the usual way, and consequently it is implied that he may sell on credit without incurring risk, provided it be the usage of the trade at the place, and he be not restrained by his instructions, and does not unreasonably extend the term of credit, and provided he use due diligence to ascertain the solvency of the purchaser.' That 'a factor may sell goods on credit, that being the ordinary course of conducting mercantile affairs,' is expressly stated by Mr. McCulloch, and that such is the custom we may regard as an established fact, to be qualified only by proof of an inconsistent local law. Of course this custom is to be limited to those who are technically factors, and can not be extended to cover the case of brokers, or of per-

sons employed by a principal to effect special and peculiar sales."

See, also, the cases of *The State of Illinois* v. *Delafield*, 8 Paige, 526, and *Delafield* v. *The State of Illinois*, 26 Wend. 190.

Such being the law, the purchaser from Conner, as such agent, was bound to take notice that he could sell for cash only; and there was no error in the instructions on this point.

We think the verdict was sustained by the evidence, and find no ground for the reversal of the judgment.

The judgment below is affirmed, with costs.