RUNYAN v. THE STATE.

CRIMINAL LAW.—*Murder.*—*Self-Defence.*—*Retreat when Assailed.*—*Use of Deadly Weapon.*—*Instruction to Jury.*—On the trial of a defendant indicted for murder, where the evidence showed, that he, being disabled in one arm, had procured a pistol to defend himself against a threatened assault by an able-bodied man, and that, while standing on a public street, leaning against a building, surrounded by an excited crowd, he had been threatened by another person, and then struck by a third, the deceased, whom he at once had shot and killed, the court instructed the jury, that, "before a man can take life in self-defence, he must have been closely pressed by his assailant, and must have retreated as far as he safely or conveniently could, in good faith, with the honest intent to avoid the violence of the assault."

*Held*, that such instruction is erroneous.

*Held*, also, that, where a person, being without fault and in a place where he has a right to be, is violently assaulted, he may, without retreating, repel force by force, and if, in the reasonable exercise of his right of self-defence, he kills his assailant, he is justifiable.

*Held*, also, in such case, that, from the evidence, the real question presented for the determination of the jury was, did the defendant, when assaulted, believe, and have reason to believe, that the use of a deadly weapon was necessary to his own safety?

*Held*, also, that no question as to the duty of the defendant to retreat was presented to the jury by the evidence.

From the Henry Circuit Court.

*J. T. Mellette, M. L. Bundy* and *Brown & Brown*, for appellant.

*C. A. Buskirk*, Attorney General, and *W. F. Walker*, Prosecuting Attorney, for the State.

NIBLACK, J.—At the February term, A. D. 1877, of the Henry Circuit Court, the appellant, John Runyan, was indicted and tried for the murder of one Charles Pressnal. He was convicted of manslaughter, and sentenced to the state-prison for the term of eight years.

From the evidence, as it comes to us in the record, it appears that the appellant, who resided two or three miles from that place, went to Newcastle, in the county of Henry, in company with some other persons, on the

7th day of November, 1876, being the day of the last presidential election, for the purpose of casting his vote. During the day, one John Spell, a large and vigorous man, had an altercation with the appellant, during which the said Spell used harsh, opprobrious and threatening language. Afterward, during the afternoon, the said Spell, on one or two other occasions, used other angry and threatening language to the appellant. Sometime in the afternoon, the appellant, whose right arm was so crippled that he had not full and free use of it, went to an acquaintance of his, who lived near by, and borrowed a pistol, saying that Spell was threatening him and following him up, and that he wanted to be able to defend himself in case he was attacked.

After dark that evening, the appellant, with some of his friends, went across to the place of voting to get some election news, if they could, before leaving for home. The appellant stopped on the sidewalk, near the voting place, and leaned himself against the wall of an adjacent building. While standing in that position, he was approached by one Benjamin F. Moore, a constable of the township and an assistant marshal of the town, who commenced a quarrel with him, using angry, threatening and disparaging language toward him. While thus engaged with the appellant, Moore discovered one Henry Ray, a brother-in-law of the appellant, standing near by, a crowd having gathered around in the meantime, and turned on said Ray to push him away, and out of the crowd. After Moore thus turned away, the deceased rushed upon the appellant and hit him two or three blows; the appellant thereupon drew a pistol from his coat pocket and shot the deceased, inflicting upon him a mortal wound, of which he soon afterward and on the same evening died.

This is a brief outline of the circumstances connected with the killing of the deceased, as we have tried carefully to make it from a voluminous mass of testimony.

A motion for a new trial was entered at the proper time and overruled.

On the trial, the court, of its own motion, gave to the jury a series of elaborate and carefully prepared instructions in writing, consisting of eighteen in number, to the giving of each of which the defendant reserved an exception. The action of the court in giving these instructions was assigned as one of the causes for a new trial.

The defendant in his brief urges objections to two only of these instructions, known as numbers seven and eight of the series, and only to so much of them as relates to the supposed duty of a person to retreat when assailed, before taking the life of his assailant.

In instruction number seven, the court commences by saying :

" The law gives to every.man the right of self-defence. This means that a man may defend his life, and may defend his person from great bodily harm. He may repel force by force, and he may resort to such force as, under the circumstances surrounding him, may reasonably seem necessary to repel the attack upon him, and, in his defence, he may even go to the extent of taking the life of his assailant. The law, however, is tender of human life, and will not suffer the life even of an assailant and wrong-doer to be taken, unless the assault is of such a character as to make it appear reasonably necessary to the assailed to take life in defence of his own life, or to protect his person from great bodily harm. And if the person assailed can protect his life and his person by retreating, it is his duty to retreat, and thus avoid the necessity of taking human life. Do not understand me, gentlemen, to say, that retreat is always necessary, before the party assailed may take life in his defence. Retreat might be perilous or impossible, and might tend only to increase the danger.

" If the assault is of such a character that it reasonably appears to the party assaulted that retreat can not be

made so as to protect his life, or his person from great bodily harm, then retreat is not required."

The court, further on in the same instruction, after discussing the right of a person to defend himself in the use and enjoyment of the public highways, including the streets of towns and cities, and other contingencies in which the law permits human life to be taken in self-defence, adds: "And before a man can take life in self-defence, he must have been closely pressed by his assailant, and must have retreated as far as he safely or conveniently could, in good faith, with the honest intent to avoid the violence of the assault."

We do not copy the instruction entire, as it is of great length, and includes other legal propositions, to which the defendant makes no objection.

That portion of the instruction last above quoted clearly does not state the law of self-defence correctly, as it is now recognized by the general drift of the American authorities.

1 Bishop on Criminal Law, 5th ed., sec. 865, says: "This right of self-defence is commonly stated in the American cases thus: If the person assaulted, being himself without fault, reasonably apprehends death or great bodily harm to himself, unless he kills the assailant, the killing is justifiable." Numerous cases are cited by him in support of that position. See, also, *Creek* v. *The State*, 24 Ind. 151; *Hicks* v. *The State*, 51 Ind. 407; *Wall* v. *The State*, 51 Ind. 453.

In the case of *Creek* v. *The State*, above cited, it was held, that retreat is not always a condition which must precede the right of self-defence.

Wharton on Criminal Law, vol. 2, sec. 1019, says: "A man may repel force by force in the defence of his person, habitation, or property, against one or many who manifestly intend and endeavor, by violence or surprise, to commit a known felony on either. In such a case he is not obliged to retreat, but may pursue his adversary till he

find himself out of danger; and if, in a conflict between them, he happen to kill, such killing is justifiable. The right of self-defence in cases of this kind is founded on the law of nature; and is not, nor can be, superseded by any law of society. * * * The right extends to the protection of the person from great bodily harm."

A very brief examination of the American authorities makes it evident that the ancient doctrine, as to the duty of a person assailed to retreat as far as he can, before he is justified in repelling force by force, has been greatly modified in this country, and has with us a much narrower application than formerly. Indeed, the tendency of the American mind seems to be very strongly against the enforcement of any rule which requires a person to flee when assailed, to avoid chastisement or even to save human life, and that tendency is well illustrated by the recent decisions of our courts, bearing on the general subject of the right of self-defence.

The weight of modern authority, in our judgment, establishes the doctrine, that, when a person, being without fault and in a place where he has a right to be, is violently assaulted, he may, without retreating, repel force by force, and if, in the reasonable exercise of his right of self-defence, his assailant is killed, he is justifiable. Whatever may have been, or now is, the true rule in such a case, we think the instruction from which we have quoted, whether considered in its separate parts, or taken altogether, laid too much stress on the duty of a party when assailed to retreat, before attempting to repel force by force, and thus prescribed too rigid a rule as applicable to the case at bar.

As we construe the evidence before us, we are inclined to the opinion, that the question of the defendant's duty to retreat when he was assailed was not fairly involved in this case, when it went to the jury. The defendant was already standing practically against a wall, and surrounded by a crowd of persons, some of whom, at least,

were unfriendly to him. While standing in that position, he was first approached by one person in an angry and threatening manner, and, when that person's back was turned, he was assaulted by another. It seems to us, that the real question in the case, when it was given to the jury, was, was the defendant, under all the circumstances, justified in the use of a deadly weapon, in repelling the assault of the deceased? We mean by this, did the defendant have reason to believe, and did he in fact believe, that what he did was necessary for the safety of his own life or to protect him from great bodily harm? On that question, the law is simple and easy of solution, as has been already seen from the authorities cited above.

In our opinion, the court erred in giving the instrucion numbered seven to the jury, and that, for that reason, the judgment will have to be reversed.

We regard instruction number eight as obnoxious, to some extent, to the same objection urged against number seven, but we do not think it necessary to set it out, or further notice it here, in addition to what has already been decided.

Other questions were reserved on the trial, and are presented to us by the record, but as they may not again arise in the cause, we deem it unnecessary to pass upon them now.

The judgment is reversed, and the cause remanded for a new trial.

The clerk will issue the necessary notice for the return of the defendant.

Petition for a rehearing overruled.