# SUPREME COURT OF JUDICATURE

#### OF THE

## STATE OF INDIANA,

### AT INDIANAPOLIS, MAY TERM, 1881, IN THE SIXTY-FIFTH YEAR OF THE STATE.

———————

No. 8882.

### MILLER v. THE STATE.

CRIMINAL LAW.—*Murder.*—*Evidence, Insufficiency of to Sustain Conviction.* —Where, on the trial of a defendant indicted for murder, the evidence tended to show that the accused was at his home, and that the deceased had followed him there for the purpose of forcing him into a fight, and that in the altercation the deceased, in assaulting the accused, was fatally stabbed by him, such evidence is insufficient to sustain a conviction of the crime of murder in the second degree.

SAME.—*Self-Defence.*—*Assault.*—*Justifiable Homicide.*—It is not necessary for one to flee from his home to avoid a fight thrust upon him by an assailant, in order to justify or excuse a homicide resulting therefrom. Being without fault, and in a place where he has a right to be, if violently assaulted, he may, without retreating, repel force by force, and if, in the reasonable exercise of his right of self-defence, his assailant is killed, he is justifiable.

From the Clay Circuit Court.

*W. W. Carter, S. D. Coffey* and *S. W. Curtis,* for appellant.

*D. P. Baldwin,* Attorney General, *C. E. Matson,* Prosecuting Attorney, and *W. W. Thornton,* for the State.

Howk, C. J.—In this case the appellant was indicted for the unlawful homicide of one Joseph Ellison, at Clay county, on the 16th day of March, 1880. The indictment contained three counts. The first charged the appellant with murder in the first degree, the second count charged him with murder in the second degree, and the third count charged him with manslaughter. His motions to quash the several counts of the indictment were sustained as to the third count, and overruled as to the first and second counts of the indictment, and to the latter rulings he excepted. Upon arraignment the appellant's plea to the indictment was that he was not guilty as therein charged. The issues joined were tried by a jury, and a verdict was returned finding him guilty of murder in the second degree, as charged in the indictment, and assessing his punishment at imprisonment in the State's prison during life. His motion for a new trial having been overruled, and his exception saved to this ruling, the court rendered judgment on the verdict.

In this court the only error relied upon by the appellant for the reversal of the judgment below is the decision of the trial court in overruling his motion for a new trial. Many causes were assigned in this motion for such new trial, but of these we will consider such causes only as the appellant's counsel have presented and discussed in their elaborate brief of this case. The first point made by the appellant's counsel, in argument, arises under the third cause assigned for a new trial, namely, "The verdict is contrary to the law and the evidence." It is earnestly insisted by counsel that, in the killing of Joseph Ellison, the appellant was not guilty, under the evidence adduced upon the trial and the law applicable thereto, of murder in the second degree, but, at the most, was guilty of no higher grade of unlawful homicide than voluntary manslaughter.

In section 7 of the felony act of June 10th, 1852, it is provided that "If any person shall purposely and mali-

ciously, but without premeditation, kill any human being, every such person shall be deemed guilty of murder in the second degree,'' etc.

In section 8 of the same act, it is declared that ''If any person shall unlawfully kill any human being without malice express or implied either voluntarily upon a sudden heat, or involuntarily, but in the commission of some unlawful act, such person shall be deemed guilty of manslaughter,'' etc. 2 R. S. 1876, p. 426.

With these statutory definitions before us of murder in the second degree and manslaughter, we proceed now to the consideration and decision of the question presented and discussed by the respective counsel, of the sufficiency of the evidence, under the law, to justify or sustain the appellant's conviction of the crime of murder in the second degree. We deem it necessary to a clear and intelligible presentation of this question, and to the proper understanding of the grounds of our decision thereof, that we should give, in this connection, a summary at least of all the evidence adduced upon the trial.

Matilda Miller, a witness for the State, testified that she lived at Carbon, in Clay county, on March 16th, 1880; that on that day, between 3 and 4 o'clock P. M., Joseph Ellison came to her house and said that he wanted to warm, and took a seat by the fire. Appellant came to her house on the same day, about half an hour after Ellison, and put up his team, and took a seat by the fire. Witness heard no conversation between them; they sat there about fifteen minutes without speaking to each other. In ten or fifteen minutes they got up to fight. Joseph Ellison sat near the fire-place, and defendant took a seat near him. Ellison threw his head over against defendant's breast, and told him that he had to fight. Defendant said he had nothing against him, and didn't want to fight him. Ellison swore he had to fight. Defendant put his right hand on Ellison's shoulder and said, ''Joe,

---
Miller *v*. The State.
---

I don't want to fight you.'' Witness then went out of the room, and when she saw that Ellison was hurt she gave the alarm. When Ellison was stabbed, he went out of the door into the middle room. He came back with his fist drawn, and said, ''Let me to him! Let me kill him!'' and he then fell on the floor and died.

On cross-examination the same witness further testified in regard to the transaction, that Ellison butted the defendant with his head pretty severely, and then put his hands up to his breast. Defendant's right hand was on Ellison's left shoulder; can't say whether he tried to push him away or not. Ellison began to rise up first. Witness saw no licks struck by either; the last words that she heard defendant speak were that he did not want to fight. Ellison swore twice that defendant should fight.

Mahlon Miller, a witness for the State, also testified concerning the homicide, that Ellison butted the defendant in the breast, and asked him if he wanted to fight. Defendant put his hand on Ellison's head and pushed him back. They got up, and I saw the defendant strike him. This was but a short time after Ellison had sworn that the defendant should fight. At the time the defendant struck him, Ellison had put his hand back to his pocket as if he was trying to get something. Defendant said he did not want to fight, but would fight if he had to. Ellison put his hand to his pocket just as he rose; then defendant struck him with a knife. I didn't notice where Ellison had his other hand. Defendant was standing in front of Ellison when the blow was given.

On cross-examination this witness testified that he went with his brother to Isaac Miller's, at his request. ''We did not know that Ellison was there; had last seen him at Nat. Priest's saloon. The first word spoken was when Ellison asked defendant if he didn't want to fight. Defendant said that he had nothing against Ellison, and didn't want to fight him. Defendant struck Ellison in the left breast with the

knife; don't know whether Mrs. Miller saw the lick or not. When Ellison was struck, he ran out of the room, and then came back and said, 'Let me to the son of a bitch!' The knife used was a common pocket knife. I saw my brother open the knife before he jumped up. He took it out of his pocket after Ellison said that he must fight."

This was all the evidence given by the State concerning the homicidal act. On this subject the defendant testified in his own behalf, in substance, that he saw Ellison on the 16th day of March, 1880; "I was working on that day for Isaac Miller; Ellison was quarreling with Ben. Dickey; I remarked that they wouldn't fight; then Ellison wanted to fight me; I refused to fight him, and went away to my work; I went home to Isaac Miller's about 4 o'clock in the evening; Ellison was there, sitting by the fire; in a short time he pushed me with his head, and swore that I should fight him; I didn't want to fight him, but he swore that I should, and then we both raised up; he made a motion as if to draw a revolver, and I drew my knife; I struck him in the left breast; I didn't intend to kill him, but only to disable him so that I could get away; he was much larger and stronger than I, and I was afraid of him; I was afraid to run, for fear he would shoot me; I knew he was in the habit of using weapons; *  *  *  * when I went to the house that day, I did not know that Ellison was there; I had no malice or ill-will against Ellison."

The foregoing was all the evidence adduced upon the trial of this cause, which has any material bearing on the subject, grade and character of the homicide. The question arises, and it is an important and controlling question in this case, was this evidence sufficient, under the law, to show that the appellant, in the killing of Joseph Ellison, was guilty of murder in the second degree, or did it justify or sustain the appellant's conviction of that grade of criminal homicide? We need not, and do not, discuss this question. It

seems very clear to us that the evidence wholly fails to sus-' tain the conviction of the appellant of the crime of murder in the second degree. Indeed, it may well be doubted, we think, from our reading of the evidence, whether or not it tends to show that, in the killing of Ellison, the appellant was guilty of any grade or degree of criminal homicide. The evidence tends to show that the appellant was at his home, where he had the right to be, and that Ellison had gone there for the purpose of forcing him into a fight. It was not necessary that the appellant should flee from his home in order to avoid the fight thus thrust upon him. There is nothing, at least in modern law, which would require such flight in order to justify or excuse a homicide resulting from such enforced fight. Thus, in *Runyan* v. *The State*, 57 Ind. 80, this court said that "the tendency of the American mind seems to be very strongly against the enforcement of any rule which requires a person to flee when assailed, to avoid chastisement or even to save human life. * * * The weight of modern authority, in our judgment, establishes the doctrine, that, when a person, being without fault and in a place where he has a right to be, is violently assaulted, he may, without retreating, repel force by force, and if, in the reasonable exercise of his right of self-defence, his assailant is killed, he is justifiable." And see the authorities there cited, and *Agee* v. *The State*, 64 Ind. 340.

For the reasons given we are of the opinion that the court clearly erred in overruling the appellant's motion for a new trial.

The judgment is reversed, and the cause remanded, with instructions to sustain the motion for a new trial. The clerk of this court will notify the warden of the proper prison to return the appellant to the sheriff of Clay county.