Presser *v.* The State.

No. 9852.

## PRESSER *v.* THE STATE.

CRIMINAL LAW.—*Assault and Battery.*—*Self-Defence.*—*Instruction.*—In a prosecution for an assault and battery with intent to kill, there is no substantial error in striking out of an instruction, defining the extent of the right of self-defence, the words, "The defendant insists that he acted in self-defence on the occasion mentioned in the indictment."

SAME.—*Deadly Weapon.*—One who unlawfully and wrongfully brings on a contest has no right to make use of a deadly weapon until he has made an effort in good faith to withdraw.

SAME.—*Self-Defence.*—Where one who is without fault is assailed by another, and he reasonably apprehends death or great bodily harm, unless he takes the life of his assailant, he is excusable in doing so upon the ground of self-defence.

SAME.—*Retreat.*—A person, being without fault, may repel force by force without retreating.

SAME.—*Mutual Combat.*—A person who wrongfully and voluntarily enters into a combat, armed with a deadly weapon, and is assailed by his adversary with his fist, is not justified in using such weapon, without in good faith making an effort to withdraw from the contest.

NEW TRIAL.—*Newly-Discovered Evidence.*—*Diligence.*—A new trial can not be granted upon the ground of newly-discovered evidence, unless it appears that the evidence would probably change the verdict upon another trial; nor unless the party asking it shows that he has used proper diligence.

WITNESS.—*Contradiction of.*—*Character.*—A witness who is contradicted by evidence disproving the matters of fact testified to by him can not call witnesses to prove good character.

EVIDENCE.—*Verdict.*—*Jury.*—*Affidavits.*—*Practice.*—Affidavits in support of a charge of misconduct on the part of a juror, which contain incompetent evidence, are properly excluded.

SAME.—Where an instrument contains competent and incompetent evidence, the court is not compelled to receive it upon the trial of any question.

From the Hancock Circuit Court.

*T. J. Kane, T. P. Davis, D. Moss* and *R. R. Stephenson,* for appellant.

*D. P. Baldwin,* Attorney General, for the State.

ELLIOTT, C. J.—The grand jury of the Hamilton Circuit Court returned an indictment against the appellant for assault and battery with intent to kill one John T. Booth. Upon the application of appellant, the venue was changed to Hancock county, where the case was tried, and the appellant convicted of an assault and battery.

The questions here presented arise upon the motion denying a new trial.

The evidence is somewhat conflicting. That for the prosecution shows this state of facts: On the morning of the last presidential election Booth was passing from his home to his store; hearing, as he arrived at the polling place, some dispute about voting a drunken man, he stopped and stood near McKenzie, one of the disputants; angry words had passed between the appellant and McKenzie, and the appellant, applying to Booth one of the vilest and most stinging epithets that a man can use, said, "You are standing at his back, are you?" Booth resented the insult, and both he and appellant were about to fight, but the persons around the polls crowded in and prevented them from fighting. Smarting under the insult, Booth made some angry remarks, and these were repeated to the appellant. Some hours after the quarrel at the polling place, appellant sent Booth a mes-

sage asking him to come and see him at a place not far from
the polls, that he wanted to amicably settle the difficulty.
Booth went to the place designated; Presser there said
something about taking back what he had said in so far as
it cast any imputation upon the mother of his adversary,
but that he would not take back anything which referred to
him personally, accompanying his statement with angry and
insulting words. Booth raised his arm to strike, but both
his hands were caught and held by a friend of Presser's,
and while in this situation Presser thrust a knife into his
side seriously wounding him. The evidence for the defence
contradicts in many material particulars that of the State.
There is no very great difference in the accounts of the
quarrel at the polls, but there is as to the encounter in which
Booth received his wound. The witnesses for the defence
testify that Booth was the aggressor and brought on the
quarrel, and that he was surrounded by friends ready to as-
sist him. It is, however, generally agreed that he came to the
place of the encounter at the solicitation of Presser. Some
of the witnesses for the defence swear that the accused did
not use a knife; others leave a different impression. There
is also a different statement as to the situation of the parties
when Presser struck, or, as he himself swears, attempted to
strike Booth. It is also sworn by these witnesses that
threats were made by Booth, and that these were commu-
nicated to the appellant prior to the rencounter, and that
Presser sought the meeting with Booth for the purpose of
amicably adjusting their quarrel.

Instructions numbered twenty and twenty-one, asked by
the appellant, read as follows:

"20. The defendant insists that he acted in self-defence
on the occasion mentioned in the indictment. The right of
self-defence extends to all cases where, from the acts of the
assailant, the defendant, being without fault himself, be-

lieves, and has reason to believe, that he is in danger of great bodily harm.

"21. If you find from the evidence, that, while the defendant was peaceably attending the last presidential election, he was violently assaulted by Booth and others, he had the right, without retreating, to repel force by force ; and if, in the exercise of his right of self-defence, his principal assailant was injured, he was justifiable."

The court refused to give the instructions as asked, but did give them with some modifications. The only change made in the language of the twentieth instruction was the striking out of the words, "The defendant insists that he acted in self-defence on the occasion mentioned in the indictment." In this there was no substantial error. The principle of law declared in the instruction was as complete and clear without these words as with them. The meaning of the instruction was not limited by their omission. The omission certainly did not impair its force.

The modification of the twenty-first instruction consisted in writing after the word "was," and before the word "violently," the words, "without fault on his part." We think the court did right in putting into the instruction the words here criticised by appellant. Without these words, the meaning of the instruction is, that the defendant was entitled to an acquittal upon the ground of self-defence, irrespective of the question of who was in fault in bringing on the combat. This is not the law. The man who unlawfully and wrongfully brings on a contest has no right to make use of a deadly weapon until he has made an effort, in good faith, to withdraw.

In *Kingen* v. *The State*, 45 Ind. 518, Mr. Bishop's statement of the rule is quoted and approved. That statement is as follows : "This right of self-defence is commonly stated in the American cases thus : If the person assaulted, being himself without fault, reasonably apprehends

death or great bodily harm to himself, unless he kills the assailant, the killing is justifiable." 1 Bishop Crim. Law, 865. This statement of the rule is that which the cases and the text-writers, with great unanimity, adopt and approve. Whart. Crim. Law, sec. 1,019 ; *The State* v. *Hays*, 23 Mo. 287, and notes ; Horrigan & Thompson Cases on Self-Defence, 492 ; *Wall* v. *The State*, 51 Ind. 453 ; *Runyan* v. *The State*, 57 Ind. 80.

The twenty-seventh instruction given by the court is as follows : "If the defendant, at the time and place charged, voluntarily and unlawfully entered into a mutual combat with John T. Booth, armed with a dangerous and deadly weapon, and Booth assaulted him with his fist, and, upon the first assault offered him by said Booth, he struck Booth with such weapon, without withdrawing or attempting to withdraw from the contest, the striking would not be justifiable." It is objected that this instruction is not applicable to the evidence. We think it was. There was evidence from which it might have been fairly inferred that the appellant sought the encounter ; that he had expected and prepared for it, and that he did, if not in words certainly in actions, consent to the combat. How much or how little evidence there was tending to prove this, is not here the question ; but, if it were, the record would supply an answer unfavorable to the appellant. The instruction was quite as favorable to the appellant as he had a right to ask. We think it expressed the law with reasonable accuracy. 1 Bishop Crim. Law, secs. 870, 871. The cases of *Steinmetz* v. *Kelly*, 72 Ind. 442, and *Miller* v. *The State*, 74 Ind. 1, do not support appellant's attack upon this instruction. In these cases there was no mutual combat. In the last of the cases, the court quoted from a former case the following : "The weight of modern authority, in our judgment, establishes the doctrine, that, when a person, being without fault and in a place where he has a right to be, is violently assaulted, he may, without retreating, repel force by force, and if, in

the reasonable exercise of his right of self-defence, his assailant is killed, he is justifiable.'' It will be seen that the court, in the case referred to, was deciding a case radically different from that contemplated by the instruction under examination.

The word ''justifiable'' is used in these instructions, and, indeed, in some of the text-books and adjudged cases, where the word ''excusable'' would be the more appropriate term. In strictness, a homicide in self-defence is excusable, not justifiable. 4 Bl. Com. 182, 184; 2 Bishop Crim. Law, secs. 619, 620. The use of the word ''justifiable'' in the instructions could not have prejudiced the appellant. On the contrary, it had the effect to give the law more strongly in his favor than the authorities warrant.

The counsel for appellant barely refer to the newly-discovered evidence stated in their motion for a new trial, and have pointed out no error in the ruling of the court denying a new trial on this ground. New trials are not granted upon the ground of newly-discovered evidence, unless it appears that the evidence would probably change the verdict upon another trial, and the newly-discovered evidence here set forth was not at all likely to have produced any different result. Nor is a new trial granted upon the ground of newly-discovered evidence unless the party asking it shows that he used proper diligence. There is here an utter lack of any showing of diligence.

A new trial was asked upon the ground of misconduct of one of the jurors. The trial court heard the evidence upon this charge, and found that it was not sustained. The evidence adduced is overwhelmingly in favor of the finding of the court upon this question.

Appellant complains that affidavits tendered by him in support of the charge of misconduct on the part of the juror were excluded. Most of the rejected affidavits were offered to prove the good character of the man who made the sworn

charge against the juror. Whether such testimony is competent at all upon the hearing of a charge of misconduct lodged against a juror, we need not decide, for the testimony contained in these affidavits was plainly incompetent, in any view of this question. There had been no attempt at impeachment. No attack had been made upon the character of the person who preferred the charge of misconduct against the juror, nor had there been any effort to impeach him by evidence of contradictory statements. His statements were contradicted, but not by way of impeachment. It is well settled that a witness who is contradicted by evidence disproving the matters of fact testified to by him can not call witnesses to prove good character.

The affidavit of Huffman, offered by the appellant, stated that "he saw Boone," the man who swore to the charge against the juror, "pick out the juror from a crowd and point him out to Poulson and McBane." This certainly was not material. In the same affidavit the good character of Boone was sworn to, and, as the affidavit was offered as an entirety, the court was justified in rejecting it. Where an instrument contains competent and incompetent evidence, the court can not be compelled to receive it upon the trial of any question.

We find no error in the record justifying a reversal.

Judgment affirmed.