No. 16,906.

## PLUMMER *v*. THE STATE.

CRIMINAL LAW.—*Self-Defense.—Excessive Violence by Officer in Attempting to Make Arrest.—Right to Repel Force by Force.*—A peace officer, in making an arrest, is not authorized to use more force than is reasonably necessary to subject the person to his authority; and if the officer use excessive force and violence upon such person, such person being where he has a right to be, he may repel force by force, and if, in the reasonable exercise of self-defense, he kills such officer, he is justifiable.

SAME.—*Verdict Contrary to Evidence.*—That the verdict is contrary to the evidence, see opinion.

SAME.—*Arrest Without a Warrant.—Officer Informing Person of his Authority.—Request to Submit.—Resisting Arrest.—Degree of Force Authorized.*—Where a peace officer attempts to make an arrest without a warrant, the reason for informing the person of his authority, and requesting him to submit thereto, is as great, if not greater, than where such officer acts under authority of a warrant; and where such officer informs the person sought to be arrested of his purpose to arrest him, and he refuses to submit, the officer having authority to make such arrest may use sufficient force to overcome such resistance, even to the taking of the life of the person resisting arrest.

SAME.— *Openly Carrying Deadly and Dangerous Weapon. — When a Crime.*— The act of openly carrying or wearing a dangerous or deadly weapon, with intent or avowed purpose of injuring another person, constitutes a crime; but such carrying or wearing in connection with threatening or menacing remarks against certain persons does not come within the statute.

SAME.—*Dangerous and Deadly Weapon.—Drawing or Threatening to Draw.—Brandishing Such Weapon.*—The law does not make the brandishing or flourishing of a dangerous or deadly weapon a misdemeanor, but it is the drawing, or threatening to draw, such a weapon on any other person that is made a crime.

SAME.—*Instructions to Jury.—Instruction Outside of Case Made.—Erroneous.*—Where an instruction in a criminal action embraces a theory upon which there is no evidence, such instruction is erroneous if it tends to mislead the jury.

SAME.—*Reasonable Doubt.—Self-Defense.—Insanity.*—As long as there is a reasonable doubt of the sanity of a defendant in a criminal case, at the time of the commission of the alleged offense, there

must necessarily be a reasonable doubt of his guilt; and as long as there is a reasonable doubt whether a homicide was not committed in the reasonable exercise of the right of self-defense, there is also a reasonable doubt of the guilt of the accused.

SAME.—*Instructions to Jury.—Erroneous Instruction not Cured by Correct One, Except, etc.*—An erroneous instruction can not be cured by giving a correct one, unless the erroneous instruction is thereby plainly withdrawn.

From the Benton Circuit Court.

*W. V. Stuart, C. B. Stuart, T. A. Stuart, E. P. Hammond, J. T. Sanderson* and *F. A. Comparet*, for appellant.

*A. G. Smith*, Attorney-General, *J. T. Brown*, Prosecuting Attorney, *E. G. Hall* and *W. Darroch*, for the State.

McCABE, C. J.—Appellant was indicted by the grand jury of Newton county, charging him in six different counts with the murder of James Dorn, in the first and second degrees, in the different counts respectively.

There was a change of venue granted to the court below, where, on a plea of not guilty, and a plea of insanity, a trial resulted in a verdict finding appellant guilty of voluntary manslaughter, and fixing his punishment at fifteen years' imprisonment in the State prison.

After overruling appellant's motions for a new trial, in arrest, and to be discharged, the court below rendered judgment on the verdict.

Among the errors assigned here, is the overruling of the motion for a new trial. And among the reasons assigned for a new trial were the giving, and refusing to give, certain specified instructions, and that the verdict is contrary to the evidence.

It appears from the evidence, which is very voluminous and quite impracticable to set out in this opinion, that the deceased, James Dorn, was a stout man, 48 years of age, with no ailment, except at times he had

been afflicted with rheumatism, though he seemed free from that at the time of his death, was the marshal of the town of Kentland, and had been such officer for eight or nine years. Appellant, Plummer, was about sixty years old, had been suffering with chronic diarrhœa, contracted in the army, for which he was receiving a pension, was in bad health generally and unable to work, somewhat smaller than Dorn and not so stout, had always been peaceable and quiet, had lived in Kentland and about there ever since the war, and owned the house and lot in said town in which he lived.

The town board of said town of Kentland had made an order requiring him to trim certain shade trees thereon, to which he objected, and, pending the dispute about it, appellant Plummer became very much excited, and about noon on the 20th day of June, 1892, he left his house with his loaded revolver in his hand and went onto the business streets of said town, inquiring for the members of said town board, making threats that he was not to be fooled with, saying they had ordered his trees to be cut down, and that he would shoot them. And while so talking in an excited manner he would frequently brandish his revolver around. John Keefe told him that the town board would not cut his shade trees down, and that he had better go home.

About this time one Elliott called out for the marshal or Dorn, and perhaps both, and he pointed his revolver at said Elliott and said to him: "Call for the marshal again, damn you, and I will kill you," and "bring on your marshal; I'll fix him." He also pointed his revolver at one Conklin, a member of the town board. Immediately after Keefe advised him to go home, he started in the direction of his home, carrying and flourishing his revolver in his hand. While he was yet in sight of those at the place where he started and still go-

ing in that direction, Dorn, the marshal, came from another direction up to the place from which Plummer had started. Keefe warned Dorn to be careful, that Plummer had a gun. Dorn then stopped, took his coat from his arm and laid it on a box, changed a revolver from his left to his right hip pocket, and took his billy in his left hand and started on after Plummer, saying he was not afraid of him. When he came within twenty feet of overtaking Plummer, they both walking in the same direction, he took out his revolver and held it in his right hand and his billy in his left hand, and ordered Plummer to put up his revolver. Plummer told him to keep off, or keep back, while Plummer walked on, looking back at Dorn as he followed him up, Dorn repeatedly ordering him to put up his gun or revolver, and Plummer repeatedly warned Dorn to keep back or keep away from him.

While the two were thus proceeding, Dorn dodged behind shade trees on the sidewalk, stepped up behind Plummer, as one of the witnesses expressed it, on his ·"tip-toes," and struck Plummer on the side of his head with his billy, and then on the back and arm, which knocked the revolver out of Plummer's hand, and thereupon Dorn fired on Plummer, missing him. Immediately thereafter Plummer fired at Dorn missing him, and they continued firing at each other until three or four·shots had been fired. Dorn jumped behind a shade tree, and was making ready to fire again, when Plummer fired the fatal shot that killed Dorn, and he fell down and died. Dorn's second shot lodged a ball in Plummer's left side, making only a flesh wound.

It is conceded that Dorn fired the first shot, though Plummer's first shot was so close to Dorn's first that it was difficult to tell which one was first. There is no direct evidence as to what Dorn, the marshal, was intend-

ing to do with Plummer, but the theory of the State is that he was intending and attempting to arrest Plummer without a warrant for his several acts, in pointing his revolver at Elliott and Conklin, and for carrying such revolver with the intent or avowed purpose of injuring his fellowman. Dorn did not inform Plummer that he desired or intended to arrest him.

In a written statement made by Plummer, read in evidence, he stated that Elliott began to call for Marshal Dorn, as he supposed, to arrest him. Plummer knew that Dorn was marshal of the town.

Both offenses for which it is claimed the marshal was attempting to arrest Plummer were misdemeanors. R. S. 1881, sections 1984, 1985.

A marshal is not authorized to arrest in all cases for misdemeanors without a warrant. He can only arrest for such offenses without a warrant when the offense is committed in his presence or sight. R. S. 1881, sections 1702, 5976; section 828, Elliott's Supp.; *Doering* v. *State*, 49 Ind. 56; *Pow* v. *Beckner*, 3 Ind. 475; Gillett's Crim. Law, section 156; Murfree on Sheriffs, section 1161.

The attorneys for the State concede this to be the law, but they contend that inasmuch as some of the witnesses testify that when Elliott called the marshal, in their opinion he was within hearing and could have heard the call, and came onto the scene within a minute or two; that he was, in contemplation of law, present, or the alleged offenses were committed in his presence, in contemplation of law. They cite *Wiltse* v. *Holt*, 95 Ind. 469. That case lends some support to that contention. Assuming, however, without deciding, that the alleged offenses were committed in the presence or sight of Marshal Dorn, within the meaning of the law, and that he, therefore, had legal authority to make the arrest with-

Plummer *v*. The State.

out a warrant, we are led to inquire whether he confined himself to the limits prescribed by the law in the exercise of that authority, and if he transcended those limits what effect that had upon his authority even if he had the right to make the arrest without a warrant. He stepped up behind Plummer and, without requesting him to submit to arrest or informing him that he desired to arrest him, with his revolver in one hand and his billy in the other, and without any act or provocation, or resistance on the part of Plummer other than his traveling on toward his home with his revolver in his hand, telling Dorn to keep back or keep away from him, Dorn struck him on the side of the head with said billy, which was a policeman's club. The law does not allow a peace officer to use more force than is necessary to effect an arrest. 1 Am. and Eng. Ency. of Law, 745, and authorities there cited.

And if he do use such unnecessary force, he thereby becomes a trespasser from the beginning, and may be lawfully resisted. 1 Am. and Eng. Ency. of Law, 745, and authorities there cited; Murfree on Sheriffs, section 1164a, and authorities there cited; Murfree on Sheriffs, sections 1160 and 148; *Jarratt* v. *Gwathmey*, 5 Blackf. 237; *Burton* v. *Calaway*, 20 Ind. 469.

If the officer is resisted before he has used needless force and violence, he may then press forward and overcome such resistance, even to the taking of the life of the person arrested, if absolutely necessary. 1 Bish. Crim. Proced., section 160; 1 Am. and Eng. Encyc. of Law, 745, and authorities there cited; Murfree on Sheriffs, section 1164a.

But here the evidence wholly fails to show any necessity for the marshal's act in striking Plummer on the head with his club. He therefore was a trespasser in

doing so, and was guilty of an aggravated assault and battery on Plummer.

He did not stop at that, but he shot at Plummer with his revolver immediately after he struck him on the head, and before Plummer had fired at him. This gave Plummer a clear right to defend himself, even to the taking the life of his assailant. It is not necessary to authorize one to exercise the right of self-defense that the assailant should in fact contemplate injury to him. If he believes, and has reason to believe, from the actions of his assailant, that he is in danger of receiving great bodily harm, he may defend himself to a reasonable extent. *West* v. *State,* 59 Ind. 113; *Agee* v. *State,* 64 Ind. 340; *McDermott* v. *State,* 89 Ind. 187.

When a person, being without fault, is in a place where he has a right to be, is violently assaulted, he may, without retreating, repel force by force, and if, in the reasonable exercise of his right of self-defense, his assailant is killed, he is justifiable. *Runyan* v. *State,* 57 Ind. 80; *Miller* v. *State,* 74 Ind. 1.

These principles apply as well to an officer attempting to make an arrest, who abuses his authority and transcends the bounds thereof by the use of unnecessary force and violence, as they do to a private individual who unlawfully uses such force and violence. ·*Agee* v. *State, supra; Jones* v. *State,* 26 Tex. App. 1; 1 Am. & Eng. Encyc. of Law, 745, note 1; *Golden* v. *State,* 1 S. C. 292; *Beaverts* v. *State,* 4 Tex. App. 175; *Skidmore* v. *State,* 43 Tex. 93.

Plummer was on the street, going home; he had a right to be there, and he had a right to carry his revolver home with him, and even though the marshal supposed he was carrying it openly with intent or avowed purpose of injuring his fellow man, that did not justify the extreme measures he resorted to. He approached

Plummer with his revolver in one hand and his club in the other, and struck Plummer on the head. This furnished reasonable ground for the belief, in Plummer's mind, that he was in danger of receiving great bodily harm, and the circumstances show that he did believe it. And though Plummer may have instantly begun to prepare to defend himself against this unlawful assault, he did not shoot until after Dorn fired on him.

The statute provides that an arrest, under a warrant, is made by an actual restraint of the defendant, or by his submission to the custody of the officer; but that the person arrested shall not be subject to any more restraint than is necessary for his arrest and detention, and the officer must inform him that he acts under the authority of a warrant, and show it, if required. R. S. 1881, sections 1687 and 1688.

Where an arrest is made for a misdemeanor, without a warrant, the reasons for requesting the person to submit to such arrest are as great, if not greater, than where there is a warrant.

We are constrained to hold that Dorn, if he even had the right to make the arrest without a warrant, abused that authority by striking Plummer over the head with his policeman's club. Had he informed Plummer that he intended to arrest him, and requested him to submit to such arrest, and then Plummer had refused to submit and resisted, or threatened to resist arrest, with any demonstration of force, a very different question would have been presented. In such a case, the officer, as we have seen, having authority to arrest, would have been justified in using force sufficient and necessary to overcome such resistance, even to the taking of the life of the person he was attempting to arrest.

We therefore hold that the verdict was contrary to the evidence.

The ninth instruction of the series of instructions given by the court on its own motion was to the effect that Dorn had a right to strike Plummer with his billy or club for the purpose of making him surrender to his authority. This was error.

The fourteenth instruction of said series was as follows:

"14. If you find, from the evidence, that, on the day of the alleged homicide, the defendant left his house in the town of Kentland, Indiana, at about, or shortly after, noon, with a loaded revolver in his possession, and that, with such revolver, he went upon the public streets of Kentland, where citizens were passing to and fro; that when he, was upon the street or streets, he openly carried said revolver in his hand or hands; that he was in an excited condition of mind, and while in this condition he inquired for members of the town board, and made threatening remarks about the members of said town board, or any other citizen of said town, or any other fellow man, with intention and purpose to injure such person or persons; and if you further find that he then and there flourished or brandished said revolver, then I instruct you that such open wearing or carrying of said revolver was a violation of a criminal statute of this State, and that the defendant was a wrongdoer, and for which violation of law he was subject to immediate arrest, without a warrant, and could have been held in custody until a legal warrant could have been procured and proceedings had under it, according to law. And if you further find that while said defendant was on the street, flourishing or brandishing his revolver, if, in fact, you so find that he was talking or muttering to himself; or if you further find, under the facts stated, if they be facts, that while he was in conversation with others, or talking or muttering to himself, one J. R. Elliott called

for the town marshal in a loud tone, so that the defendant heard him, and that he immediately turned toward the said Elliott and pointed said revolver at him, although you may find he was some distance away, and that if you find that when he pointed said revolver at the said Elliott, if you find he did so point it, he cried out: 'Bring on your marshal; I'll fix him,' or words to that effect, then I instruct you that such pointing at said Elliott, whether it was done with wicked intent or for mere foolishness, or in jest, was a violation of a criminal statute of this State, for which the defendant was liable to immediate arrest, without a warrant, and could be held until such reasonable time that a legal warrant could be obtained, upon which he could be legally tried. And, I instruct you further, that, under the facts stated, if they be facts, and while the said defendant was still upon the street, and the marshal came upon the street, though at some distance away, but where he could see the defendant while he was still flourishing and brandishing his revolver, or while he was still pointing it toward the said Elliott, it was not only his right, but his duty, as a peace officer, to pursue and arrest the defendant, without a legal warrant, and such arrest, if made, would be justifiable, under the law. And I instruct you further that if you find, from the evidence, that the said marshal, James Dorn, under the facts above stated in this instruction, if they be facts, pursued the defendant, even though you may find that the defendant was going toward his home, with the intention of arresting the defendant for said violation of law, and when the said Dorn came up to or near the defendant, he found the defendant still had his revolver in his hand, that he was talking to himself, and was acting in an unnatural manner, either from excitement, anger, or otherwise, and if you find, from the evidence, that the said Dorn called to the

defendant and commanded him to put up his gun or re-
volver, and if you further find, from the evidence, that
instead of putting up his revolver he turned toward the
marshal, pointed his revolver at him, flourished and
brandished it in his face, and made any threatening re-
marks to the marshal; and if you find that the defendant
knew Dorn was the marshal, then I instruct you that
such acts of the defendant would be in violation of the
criminal law of this State, for which he was liable to im-
mediate arrest, without a warrant, and it was not only
the right, but the duty, of the marshal to arrest him at
once, and the marshal was authorized to use such force
as was necessary to accomplish his arrest.   And if you
find that the said Dorn did, as such marshal, in dis-
charge of his duties as a peace officer of said town, un-
dertake to arrest the said defendant, that the defendant
resisted his attempts to arrest him, and that Dorn did
not use unnecessary force or vigor in attempting to make
the arrest, and that while he was so attempting to make
said arrest the defendant shot and killed him, then you
should find the defendant guilty, unless you find, beyond
a reasonable doubt, that the killing was justifiable, on
the ground of self-defense; or unless you find, beyond a
reasonable doubt, that the defendant was of unsound
mind at the time.''

There are several errors in this instruction.   The first
is that it, in effect, tells the jury that if the appellant, in
an excited state of mind, inquired for members of the
town board and made threatening or menacing remarks
about them, or any other citizen of said town or any
other fellowman, with intention to injure such person
or persons, and if he flourished or brandished said re-
volver, then such open wearing was a violation of a crim-
inal statute of this State.   It is only the act of openly
carrying or wearing a dangerous or deadly weapon with

intent or avowed purpose of injuring a fellow man that is made criminal by the statute. R. S. 1881, section 1985.

That part of the instruction makes the offense to consist of making threatening or menacing remarks about the town board or other citizen, with intent to injure, etc., instead of the act of openly carrying the revolver with such intent.

The instruction was erroneous, in that it in effect told the jury that for pointing his revolver at Elliott and saying, "bring on your marshal, I'll fix him," the defendant was liable to immediate arrest without a warrant, and that it was the right and duty of the marshal to pursue and arrest him, though no part of said acts were perpetrated either in the presence or sight of the officer, because it says, "and while the defendant was still upon the street, and the marshal came upon the street, though at some distance away, but where he could see the defendant while he was still flourishing and brandishing his revolver, or while he was still pointing it toward said Elliott," then he might make the arrest, etc.

The instruction had already told the jury that pointing the revolver at Elliott would be sufficient cause for arrest without a warrant, and then supplemented the same by stating, as a qualification thereto, the proviso, that the officer was near enough to see the act done, but puts it: "Could see defendant while he was flourishing and brandishing his revolver, or while he was still pointing it at Elliott."

This would leave the jury to conclude that the officer would have the right to make the arrest if he saw either the defendant brandishing his revolver or pointing it at Elliott.

The statute does not make the brandishing or flourish-

ing of a dangerous or deadly weapon a misdemeanor, but it is the drawing, or threatening to draw, such a weapon upon any other person that is made criminal. R. S. 1881, section 1984.

The instruction proceeded upon the theory that appellant had resisted arrest, and while so doing made threatening remarks toward the marshal. There was no evidence of either, and the instruction was calculated to mislead the jury to conclude that there had been such evidence. There are, perhaps, other respects in which the instruction set out was erroneous.

The 15th instruction by the court of its own motion is still more objectionable, because it told the jury that a peace officer might make an arrest in such a case without a warrant, and without any qualification whatever. This, we have seen, is not the law.

But the most serious and fatal objection to the 14th instruction above set out, is the concluding part, which tells the jury that if they find a certain state of facts recapitulated to be true, then they must find the defendant guilty, unless they find, beyond a reasonable doubt, that the killing was justifiable, on the ground of self-defense; or unless they find, beyond a reasonable doubt, that the defendant was of unsound mind at the time.

The 16th repeats the same proposition as to the defense of insanity. As long as there is a reasonable doubt of the sanity of a defendant in a criminal case, at the time of the commission of the alleged offense, there must necessarily be a reasonable doubt of his guilt; and as long as there is a reasonable doubt whether the homicide was not committed in the reasonable exercise of the right of self-defense there is also a reasonable doubt of the guilt of the accused. The instructions in question required the defendant to prove his innocence in that respect beyond a reasonable doubt, the homicide being established.

There was much evidence tending to prove appellant's insanity at the time of the commission of the alleged offense, and the evidence strongly tended to establish that the homicide was committed in self-defense.

It was, therefore, error to instruct the jury that they should find the defendant guilty unless they found, beyond a reasonable doubt, that the killing was justifiable on the ground of self-defense, or unless they found, beyond a reasonable doubt, that the defendant was of unsound mind at the time. *Polk* v. *State,* 19 Ind 170; *Stevens* v. *State,* 31 Ind. 485; *Guetig* v. *State,* 66 Ind. 94; *McDougal* v. *State,* 88 Ind. 24; *Plake* v. *State,* 121 Ind. 433.

The attorneys for the State, conceding that the instructions under consideration were erroneous in the respect mentioned, claim that in the instructions given at the request of the appellant, and those given at the request of the State, and those given by the court on its own motion, all of which are exceedingly voluminous, the court had correctly instructed the jury upon the point in question at least twenty-five times, and that, therefore, it must have been a "slip of the pen," by which the court had made these two read as they do, and, therefore, they say we can not think that it could have influenced the jury to find the defendant guilty.

It is true that quite a number of the instructions given do correctly state the law on the point in question, but this court has frequently decided that an erroneous instruction can not be cured by giving a correct one, unless the erroneous instruction is thereby plainly withdrawn. *McDougal* v. *State, supra; Kingen* v. *State,* 45 Ind. 518; *Howard* v. *State,* 50 Ind. 190; *Kirland* v. *State,* 43 Ind. 146; *Heyl* v. *State,* 109 Ind. 589.

There was no attempt to withdraw the erroneous parts

of the instruction mentioned. The instructions were all in writing, and none of them attempted to withdraw the erroneous instruction.

The judgment is reversed, with instructions to sustain the motion for a new trial.

Filed Oct. 10, 1893.