Shane Allen WILSON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A02–0504–CR–271.

Court of Appeals of Indiana.

Feb. 17, 2006.

Rehearing Denied April 19, 2006.

Steven Knecht, Lafayette, for Appellant.

Stephen R. Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BARTEAU, Senior Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Shane Allen Wilson appeals his conviction of resisting law enforcement by fleeing, a Class D felony. Ind.Code § 35–44–3–3.

We reverse and remand.

### ISSUES

The following issue is dispositive:

Whether the trial court committed reversible error when it declined to give a proposed instruction that informed the jury about a defendant's right to protect himself when arresting officers use excessive force.

### FACTS AND PROCEDURAL HISTORY

On September 6, 2003, Officer Matthew Myers, a Clinton County Deputy Sheriff and Town of Mulberry Police Officer, noticed a red, white and blue truck proceeding down a road in a rural area of Clinton County, Indiana. Myers knew that Shane owned the truck and that an arrest warrant had been issued due to an alleged violation of Shane's probation.

Officer Myers initiated a stop just as Shane turned onto a county road in Tippecanoe County. Although Myers parked at least fifty feet behind Shane's truck, he heard Shane's protesting scream and immediately confirmed Shane's identity. Shane, appearing nervous and agitated, told Officer Myers, "Let me go, or I'm going to run." Officer Myers jogged to the truck as Shane started to pull away, and Shane stopped the truck. Officer Myers then requested that Shane put the truck in park, turn off the engine, and exit the vehicle so the two could talk. Shane partially complied by putting the truck in park.

Shane then stated that this would be the day he (Shane) would die if Officer Myers persisted in taking him to jail. Shane asked Officer Myers to "give him a break and let him go," and Officer Myers informed him that he could not do so. At some point during the conversation, Officer Myers, who had recently talked to Shane's parents about the arrest warrant, remarked, "fifty-seven days left," to indicate the amount of time left on the warrant. Shane's truck started "to roll again," but Shane applied the brakes when Officer Myers told him to do so. Shane then became very agitated and began to cry.

Mulberry Town Marshall Glenn Wilson soon arrived and walked up to the truck while Officer Myers continued to talk to Shane. When Shane saw Wilson, he said, "Let me go, Glenn." Transcript at 23. Wilson responded, "Shane, you know you've got to go to jail today." Shane then began yelling that he couldn't go to jail.

At this point, the State's evidence is conflicting. Officer Myers and Wilson testified that Shane started to pull away at a high rate of speed, and then both officers began shooting at the truck's tires. Clinton County Deputy Sheriff Jared Blacker tes-

tified that just before he turned a corner near the scene he heard the shots, and as he turned the corner he observed the truck's tires spinning as it began to "take off." Transcript at 97.

Wilson flattened the truck's left rear tire by firing two shots from his handgun. Wilson then tried to shoot the right rear tire but hit the license plate instead. Officer Myers fired seven shots at the truck as it moved away from the scene. Some of the shots hit the truck's bed, and one shot passed through the back driver's window and out the front windshield, resulting in a head injury to Shane. Shane proceeded a quarter mile down the road, where he jumped out of the truck and ran to a nearby barn. He surrendered to the officers without further incident.

Shane was subsequently charged with and found guilty of resisting arrest by fleeing. Officer Myers and Wilson both were charged with criminal recklessness, but neither had been tried at the time of Shane's trial. Shane was sentenced to three years' imprisonment with one year suspended. He now appeals.

## DISCUSSION AND DECISION

 Shane contends that the trial court abused its discretion in refusing to give a proposed jury instruction. The purpose of an instruction is "to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Overstreet v. State*, 783 N.E.2d 1140, 1163 (Ind.2003), *cert. denied*, 540 U.S. 1150, 124 S.Ct. 1145, 157 L.Ed.2d 1044 (2004). A trial court erroneously refuses to give a tendered instruction, or part of a tendered instruction, if: "(1) the instruction correctly sets out the law; (2) evidence supports the giving of the instruction; and (3) the substance of the instruction is not covered

by the other instructions given." *Id.* As a general rule, instruction of the jury lies within the sound discretion of the trial court. *Hero v. State,* 765 N.E.2d 599, 602 (Ind.Ct.App.2002), *trans. denied.* "A decision on the submission of jury instructions is only reversible upon a showing of abuse of that discretion." *Id.*

Here, Shane initially proposed "Defendant's Tendered Final Instruction 1," which stated:

> The law does not allow a peace officer to use more force than necessary to effect an arrest, and if he does use such unnecessary force, he thereby becomes a trespasser, and an arrestee therefore may resist the arrester's use of excessive force by the use of reasonable force to protect himself against great bodily harm or death. If you find that Officer's (sic) Myer (sic) and Wilson used more force than necessary to effectuate the arrest, then Shane Wilson was permitted to resist the arrest to such an extent as necessary to protect himself from great bodily harm or death, and you must find him not guilty of resisting law enforcement. *Plummer v. State,* 135 Ind. 308, 34 N.E. 968 (1893); *Casselman v. State,* 472 N.E.2d 1310 (Ind.App. 1985); *Wise v. State,* 401 N.E.2d 65 (Ind.App.1980); *Heichelbech v. State,* 258 Ind. 334, 281 N.E.2d 102 (1972); *Birtsas v. State,* 156 Ind.App. 587, 297 N.E.2d 864 (1973).

The initial statement of the law in the instruction is based upon our supreme court's holding in *Plummer.* The trial court refused to give the proposed instruction and also refused to allow trial counsel to edit the instruction to reflect the statement in *Wise* that when officers use excessive force in making an arrest an arrestee may resist the law enforcement to prevent great bodily harm or death. The trial court rejected the instruction on the basis

that the right to resist an unlawful arrest, as that right is expressed in *Plummer,* "has all gone by the way side." Transcript at 135. The trial court concluded that "[i]f you're going to be arrested, your complaint about an unlawful arrest is not to resist it. Your right [is] to bring an action later, but that doesn't give you the right to resist the arrest." Transcript at 135–36. Shane's counsel responded to the court's reasoning by pointing out that a defendant who is killed by arresting officers' excessive force would be unable to pursue a civil court action. The trial court acknowledged defense counsel's statement but ultimately refused to give the instruction, both as initially proposed and also in its redacted or edited version.

In *Plummer,* the defendant became angry when the Kentland Town Board ordered him to trim shade trees on his property. The defendant then "left his house with his loaded revolver in his hand, and went onto the business streets of [the] town inquiring for the members of [the] town board, making threats that he was not to be fooled with, saying they had ordered his trees to be cut down, and that he would shoot them; and, while so talking in an excited manner he would frequently brandish his revolver around." 34 N.E. at 969. After being told to go home, the defendant started walking back to his property. The town marshal then came upon the scene and ordered the defendant to "put up his gun." When the defendant did not do so, the marshal approached the defendant from behind, struck the defendant with his billy club, and fired his gun at the defendant. The defendant, who had dropped his gun when he was struck by the billy club, retrieved his gun and returned fire. During an exchange of further gunfire, the marshal was killed.

After noting that the marshal was attempting to make an illegal arrest, our

supreme court further noted that a police officer may not "use more force than necessary to effect an arrest." 34 N.E. at 968–69. The court held that if an officer is resisted before he has used "needless force and violence," he may then "press forward and overcome such resistance, even to the taking of the life of the person arrested, if absolutely necessary." *Id.* at 969. The court then noted that the marshal had not indicated to the defendant that he was under arrest and that there had been no necessity for the marshal to strike the defendant with his billy club. The court reasoned that the marshal therefore became a "trespasser" and that the marshal's assault with the billy club, coupled with the discharge of his weapon, "gave [the defendant] the clear right to defend himself." *Id.* The court stated that "[w]hen a person, being without fault, is in a place where he has a right to be, and is violently assaulted, he may, without retreating, repel force by force, and if, in the reasonable exercise of his right of self-defense, his assailant is killed, he is justifiable." *Id.* (citing *Runyan v. State,* 57 Ind. 80 (1877); *Miller v. State,* 74 Ind. 1 (1881)).

The trial court erroneously believed that the rule stated in *Plummer* has been set aside. The trial court's allusion to the right to challenge an improper arrest in a civil court shows that the court equated the rule stated in *Plummer* with the very different rule discussed in *Fields v. State,* 178 Ind.App. 350, 382 N.E.2d 972 (1978). In *Fields,* the issue before the court was whether any amount of force should be used by one unlawfully but *peaceably* arrested. *Id.* at 976. The court stated that the common law rule allowing a person to resist an unlawful but peaceful arrest is outmoded because it tends to escalate violence. *Id.* at 975. The court further stated that "[a] citizen, today, can seek his remedy for a policeman's unwarranted and illegal intrusion into the citizen's private affairs by bringing a civil action in the courts against the police officers and the governmental unit which the officer represents." *Id.* Therefore, the court held that "although [Field's] initial arrest was unlawful, he was not entitled to forcefully resist [the arresting officer's] attempt to apprehend him." *Id.* at 975. The court specifically noted that "this appeal does not address issues that arise when an arrestee apprehends that the arresting officer is using excessive force and that unless the arrestee defends himself, he is likely to suffer great bodily harm or death." *Id.*

In *Wise v. State,* 401 N.E.2d 65, 68 (Ind.Ct.App.1980), this court noted that *Fields* did not address the common law rule allowing a person to use force in resisting excessive force by an arresting officer. We further noted that other jurisdictions have recognized the general rule that an arrestee may use reasonable force "to defend himself against the use of greater force by the arrester than is required to effect the arrest." *Id.* (citing Anno.: 44 A.L.R.3d 1078 (1972)). We discussed *Heichelbech v. State,* 258 Ind. 334, 281 N.E.2d 102 (1972) and *Birtsas v. State,* 156 Ind.App. 587, 297 N.E.2d 864 (1973), and concluded that "[w]hile neither *Heichelbech* nor *Birtsas* explicitly states so, they clearly imply that Indiana adheres to the general rule allowing an arrestee to resist the arrester's use of excessive force by the use of reasonable force to protect himself against great bodily harm or death." *Id.*

In a subsequent case, this court noted that "the rule that a citizen may not resist a peaceful, though illegal, arrest was not 'intended as a blanket prohibition so as to criminalize any conduct evincing resistance where the means used to effect an arrest is unlawful.'" *Shoultz v. State,* 735 N.E.2d 818, 823 (Ind.Ct.App.2000) (citing *Casselman v. State,* 472 N.E.2d 1310, 1315 (Ind.

448

Ct.App.1989)). We concluded that a citizen has the right to resist an officer that has used unconstitutionally excessive force in effecting an arrest, but the force used to resist the officer's excessive force may not be disproportionate to the situation.

The *Wise* and *Shoultz* cases were correct in their interpretation of the case law. There has been no abrogation of the common law rule allowing an arrestee to resist arrest to avoid personal injury or death when the arresting officers engage in excessive force. Furthermore, the rule should be interpreted to encompass a situation where an arrestee determines to retreat rather than escalate the violence. Accordingly, the trial court erred in determining that the proposed instruction was an incorrect statement of the law.

The trial court also rejected the proposed instruction on the basis that the evidence at trial did not support the giving of the instruction. The parties do not dispute that Officer Myers and Wilson fired multiple shots at Shane's truck while he was an occupant therein. As we noted in the statement of facts above, the State presented two versions of how and when the shooting began. According to Officer Myers and Wilson, the shooting occurred after Shane attempted to escape. However, Clinton County Deputy Sheriff Jared Blacker testified that he observed the truck begin to accelerate after the shooting started. It is undisputed that once the shooting began, a bullet passed through the cab window and Shane sustained a head injury. Under Deputy Sheriff Blacker's version of the facts, Shane had little chance of protecting himself from serious bodily injury or death. He would have been warranted in protecting his life by fleeing the hail of bullets directed at his truck. Accordingly, there was evidence that supported the giving of an instruction addressing Shane's right to resist the arrest. The trial court erred in determining that the evidence did not warrant the giving of the proposed instruction.

The proposed instruction is a correct statement of the law that is not covered by any other instruction, and the evidence supports the giving of the instruction. Accordingly, the trial court erred in not giving the instruction. The court's error, however, is subject to harmless error analysis. *See Seeley v. State,* 678 N.E.2d 1137, 1139 (Ind.Ct.App.1997), *trans. denied.*

In his closing argument, the deputy prosecutor reminded the jury members that they had "taken an oath to follow the instructions by the judge" and that they should notice that the instructions given to them did not state "that if the officer is shooting your tire, that gives you the license to take off. There is not going to be anything that even resembles that in the instructions." Transcript at 161. This argument emphasized the trial court's erroneous decision to not give the proposed instruction. Had the instruction been given, the jury would have been properly informed of a defendant's right to protect himself against great bodily harm or death and could have made a well-informed decision as to whether the right was available to Shane. The trial court's failure to give the instruction was not harmless error.

*CONCLUSION*

The trial court erred in refusing to give the proposed instruction. We reverse and remand with instructions that the trial court vacate Shane's conviction.

Reversed and remanded.

ROBB, J., and MAY, J., concur.