AGEE v. THE STATE.

CRIMINAL LAW.—*Indictment.*—*Assault with Intent to Murder.*—An indictment charged, that, on, etc., at, etc., the defendant "did feloniously attempt to commit a violent injury upon" a person named, the defendant "having then and there a present ability" so to do, "by then and there feloniously, purposely and with premeditated malice shooting at and against" such person, with a pistol loaded with gunpowder and leaden balls and then and there in the defendant's hands, "with intent then and there and thereby" such person "feloniously, purposely and with premeditated malice to kill and murder."

*Held,* that the indictment is sufficient.

SAME.—*Resisting Arrest on Warrant for Bastardy.*—*Self-Defence.*—*Assisting Officer.*—*Instructions.*—On the trial of the defendant, on such indictment, the evidence of the State was, in effect, that the defendant, in avoiding an arrest for bastardy upon a warrant which he knew was in the hands of the prosecuting witness, who was authorized by the officer to make the arrest, threatened to and did shoot at such witness with a loaded pistol, and there was also evidence tending to show an exchange of shots after the first fire; and the defendant's evidence was, substantially, that he had no knowledge that the prosecuting witness had the warrant, or any authority to arrest him, and knew he was not an officer, that the defendant shot at the prosecuting witness only upon the latter's presenting a loaded pistol and threatening to kill him, that there was an exchange of shots, and that he did not intend to kill the prosecuting witness, but shot merely in self-defence.

The defendant asked the court to give to the jury certain instructions relating to the right of self-defence, and denying the right of an officer to kill a person who is fleeing from arrest upon such a warrant.

*Held,* the instructions (which are set out in the opinion in full) properly stating the law, that they ought to have been given.

From the Pike Circuit Court.

*J. E. McCullough, C. H. McCarty* and ——— *Thompson,* for appellant.

*T. W. Woollen,* Attorney General, and *W. H. Trippet,* Prosecuting Attorney, for the State.

NIBLACK, J—This was a prosecution for an assault. with the intent to commit murder.

The indictment charged, " that John Agee, on the 18th day of December, A. D. 1877, at," etc., " did feloniously attempt to commit a violent injury upon the person of Devore C. Houchens, he, the said John Agee, having then and there a present ability to commit said injury, by then and there feloniously, purposely and with premeditated malice, shooting at and against the said Devore C. Houchens with a certain pistol, commonly called a revolver, then and there loaded with gunpowder and leaden balls, which the said John Agee then and there in both his hands had and held, with intent then and there and thereby him, the said Devore C. Houchens, feloniously, purposely and with premeditated malice, to kill and murder."

A motion to quash the indictment was interposed and overruled.

A jury returned a verdict of guilty as charged in the indictment, and the defendant was fined in the sum of five dollars, and sentenced to imprisonment in the state-prison for the term of two years.

The defendant has appealed to this court, and assigned for error the overruling of his motion to quash the indictment, and the refusal of the court to grant him a new trial.

A similar indictment was before us in the case of *McCulley* v. *The State,* 62 Ind. 429, and was held to be sufficient as an indictment for an assault with intent to commit murder. Upon the authority of that case, we must hold the indictment now before us to have been good, as an indictment for the same offence.

Upon the trial there was evidence on the part of the State tending to show that Theodore Houchens was a constable of his township, and that as such constable he had, a short time before the commission of the offence alleged in the indictment, received a warrant for the arrest of the appellant on a charge of bastardy, which warrant he had placed in the hands of his brother, the prosecuting witness, for service.

Devore C. Houchens, the prosecuting witness, testified, amongst other things, in substance as follows:

"My name is Devore C. Houchens; I know John Agee; I saw him at Sylvester Coleman's; we had been hunting him that day; my brother, Theodore Houchens, had been along with us, but when we started down to Coleman's he went over to Hunt's, about one-fourth or one-half a mile away; he was over there at the time of the shooting. When we got to Coleman's house, I stepped in on the west side and saw Agee go out on the east side; I went through and followed him out on the east side; I told him I had a warrant for him; he kept going on, and told me to keep it; he said life was not worth any thing to him, and, if I valued mine, I had better not crowd on him; he then raised his pistol, and pointed it at me and shot; I insisted upon his giving up; he said he would not; I did not take my pistol out until after he shot; I was about twenty feet from him when he shot; I was going towards him. I had a warrant in my possession then; I had had it three or four days. * * * I was ordered by the constable to assist him that day in the arrest of John Agee."

In most of his material statements the prosecuting witness was more or less corroborated by several other witnesses. There was also evidence on the part of the State tending to show that some shots were mutually exchanged after the first fire.

The defendant testified in his own behalf, amongst other things, as follows :

" My name is John Ageé; * * * I am twenty-six years old now. I remember the difficulty in question in this case; I was at Sylvester Coleman's; Devore Houchens came there with Kline McCandless and Hunt; John Hunt came in the house and passed through the house; I stepped out in the back yard; I was climbing over the fence and heard some one say, 'right here I will kill you ;' I jumped down off of the fence and turned around and Devore C. Houchens was just in the act of shooting; he had a great big pistol pointed right at me; there was not a word said about his having a writ, before the shooting; when I turned around and saw him with the pistol pointed at me, I shot; I could not tell which shot first; we both shot about the same time; he stepped forward again and shot, and I returned the fire again ; he gave me no notice that he was an officer; I knew before, that he was not a constable; I told him I would hate to hurt him. After the shooting was over, I asked them if they had a writ; they read no writ, and showed me none; the revolver I had was a small 22 revolver, the smallest that is made; I was about fifteen steps from him when I shot; I could not take the life of a man that far with it; I did not intend to take his life."

The defendant was slightly corroborated in some of his statements by the testimony of other witnesses.

At the proper time the court instructed the jury very fully as to what had to be proved to sustain the prosecution, and the weight of evidence necessary to authorize a conviction in cases like the one at bar. Also, as to the doubts and presumptions which went in favor of the defendant, but did not instruct them in any respect as to the law governing the right of self-defence.

In addition to those given by the court on its own mo-

tion, the defendant prayed the court to give ten instructions, submitted on his behalf by his counsel. The court gave, substantially, the first six of those instructions, and refused to give the remaining four.

Nos. 7 and 8 of the series, being two of those refused, were as follows:

" 7. In determining whether the defendant is guilty at all in this case, you should take into consideration what Devore C. Houchens was doing at the time of the shooting by the defendant, providing you find that the defendant shot at Houchens. You should take into consideration the question of whether or not the defendant at that time believed, and as a reasonable man might believe, that the said Devore C. Houchens was attempting to take the life of the defendant, or do him great bodily harm. There is some evidence before you to the effect that said Houchens was attempting, at that time, to arrest the defendant. Even if the said Houchens had, at that time, a valid warrant for the arrest of the defendant, with full authority to execute that warrant, still the said Houchens would have had no right to shoot the defendant, merely for the purpose of arresting him at a time when the defendant was fleeing, and if the said Houchens had shot the defendant and killed him, merely for the purpose of preventing the defendant from fleeing and escaping an arrest, the said Houchens would have been guilty of murder. And hence, if you should find from the evidence, that, at a time when the defendant was fleeing, the said Houchens attempted to take the life of the defendant, or to do him great bodily harm, by shooting at him with a dangerous and deadly weapon, then the defendant would have had the right to repel such an attack with force. If the defendant, under such circumstances, used no more force than was reasonably necessary to repel such an attack, the defendant would be excusable for such force used by him, and should not be convicted therefor of any degree of offence.

"8. The theory of self-defence is, that the party assailed may repel force by force. When a party's life is in danger, or he is in danger of some great bodily harm, or when, from the acts of the assailant, he believes, and has reasonable grounds to believe, that he is in danger of losing his life, or receiving great bodily harm from his assailant, the right to defend himself from such danger or apprehension may be exercised by him, and he may use it to any extent which is reasonably necessary. And even if death of the assailant result from such reasonable defence, the party so defending himself is excusable."

These instructions impress us as having been somewhat hastily prepared, and perhaps might be improved upon a careful revision, but we think, that, so far as they went, they gave a substantially correct statement of the law of self-defence, as applicable to the testimony of the defendant, and ought to have been given. *Runyan* v. *The State,* 57 Ind. 80.

We do not set out instructions numbered 9 and 10, refused as above, as they are mainly but repetitions in other forms of portions of instructions numbered 7 and 8, above quoted.

As the court gave no other equivalent instructions, or any other instruction bearing upon the same general subject, we are constrained to hold that it erred in refusing to give instructions numbered 7 and 8, above set forth.

The judgment is reversed, and the cause remanded for a new trial.

The clerk will give the proper notice for the return of the prisoner.