## MALONE *v.* THE STATE OF INDIANA.

### [No. 21,843.   Filed October 13, 1911.]

1. CRIMINAL LAW.—*Evidence.—Threats.—Conspiracy.—Felonious Assault.*—In the prosecution of a Tell City boy for a felonious assault upon a Troy boy, it was not erroneous to sustain an objection to a question propounded to defendant's witness asking "what, if anything, did you hear about causing the Tell City boys any trouble that night?" the defendant offering to prove in answer thereto that several Troy boys agreed to stand together and drive the Tell City boys, including defendant, from the grounds, even if they had to "hurt them bad," and that these threats were communicated to defendant before the altercation,

the question being too general, and, even if competent, being rendered harmless error by the answer of the witness to an inquiry by the judge if he had heard the prosecuting witness "say anything," the witness answering in the negative. p. 340.

2. CRIMINAL LAW.—*Evidence.*—*Threats.*—*When Competent.*—Evidence of threats uncoupled with any overt act on the part of the prosecuting witness is incompetent. p. 342.

3. CRIMINAL LAW.—*Evidence.*—*Conspiracy.*—*Threats.*—Threats of alleged conspirators are incompetent unless a *prima facie* case of conspiracy is shown or will be shown. pp. 342, 343.

4. EVIDENCE.—*Conclusions.*—*Offers of Proof.*—An offer of proof should state the facts to which the witness will testify in answer to the question propounded, mere conclusions therein rendering harmless any error in sustaining an objection to the question. p. 343.

5. CRIMINAL LAW.—*Instructions.*—*Duplication.*—It is not erroneous to refuse to duplicate instructions. p. 343.

6. CRIMINAL LAW.—*Instructions.*—*Duplication.*—*Self-Defense.*—Where the court has instructed that defendant had the right to use such force as he might "reasonably think" necessary in repelling an attack, to the extent of taking the life of his assailant, it was not erroneous to refuse another that one attacked had the right to kill his adversary provided he used no more force than "reasonably appeared" necessary to him at the time. p. 344.

7. CRIMINAL LAW.—*Instructions.*—*Duplication.*—*Self-Defense.*—Where the judge, in a prosecution for felonious assault, has instructed that if defendant was assaulted in such a manner that he believed himself to be in danger of great bodily harm he might repel force without retreating, that he might use such force as he reasonably thought necessary to repel the attack, that to avert great bodily harm he might take his assailant's life, and that it was for the jury to say whether he acted in reasonable self-defense, it is not erroneous to refuse another instruction that the jury might consider the "situation and apparent surroundings" of defendant in determining whether he believed his life in danger or that he might suffer great bodily harm. p. 344.

8. CRIMINAL LAW.—*Instructions.*—*General.*—*Specific.*—Where the instructions given in a criminal case are general, it is erroneous to refuse to give correct, requested, specific ones. p. 345.

9. CRIMINAL LAW.—*Instructions.*—*Inapplicability.*—Instructions should be refused where not applicable to the evidence. p. 345.

10. CRIMINAL LAW.—*New Trial.*—*Newly-Discovered Evidence.*—In a prosecution for felonious assault and battery, alleged newly-discovered evidence that at the time of the assault another slipped the open knife, with which the assault was made, into

defendant's hand, is not a ground for a new trial, the manner of defendant's obtaining the knife being immaterial to defendant. p. 345.

11. CRIMINAL LAW.—*New Trial.—Newly-Discovered Evidence.—Cumulative.*—Evidence that one of defendant's witnesses, at another trial, will testify that the prosecuting witness conspired with others to harm defendant, is not a ground for a new trial, where on the trial he was asked concerning such matters but, upon objection, no offer of proof was made, and where others had testified to such conspiracy. p. 346.

12. CRIMINAL LAW.—*Evidence.—Appeal.*—A conviction will not be reversed for the want of evidence, where there is some evidence tending to support every material element of the offense charged. p. 347.

13. CRIMINAL LAW.—*Witnesses.—Credibility.—Jury.*—The credibility of the witnesses in a criminal case is for the jury. p. 347.

From Perry Circuit Court; *William Ridley,* Judge.

Prosecution by The State of Indiana against Arnold Malone. From a judgment of conviction, defendant appeals. *Affirmed.*

*Philip Zoercher,* for appellant.

*Thomas M. Honan,* Attorney-General, *Thomas H. Branaman, J. E. McCullough* and *Edwin Corr,* for the State.

Cox, J.—Appellant was tried by a jury, and found guilty of assault and battery with intent to commit manslaughter. His motion for a new trial was overruled, and this ruling of the trial court is the sole error assigned in this court.

James Pannett was called as a witness for appellant, and after stating his name, his place of residence, that he knew appellant, and that he was in Troy the night of the trouble, the following question was asked him:

1. "What, if anything, did you hear about causing the Tell City boys any trouble that night?" Objection to this question was made by the State, and counsel for appellant made the following offer to prove in response to the objection: "Defendant offers to prove by the witness, and the witness will testify in answer to the question, that Emil Berger, Spits Paulin, Alvin Gates, and several others, had agreed to drive

the Tell City boys, including Malone, from the grounds, and that they were especially bitter in their reference to Malone, calling him a red-headed ——— ———, and saying that they would drive him away, even if they had to hurt him and hurt him bad; that the witness would further testify, if permitted to do so, that when Smith came to the grounds he joined with Berger, and the others before mentioned, for the purpose of driving Malone and the other Tell City boys from the grounds, even if it was necessary to hurt these boys and hurt them bad; that Smith said: 'We must stand together,' and that these threats had been communicated to Malone before the cutting.'' The court sustained the objection, and counsel for appellant earnestly contends that this was error of law for which appellant should have been given a new trial.

We gather from the record that near the town of Troy, in Perry county, at the time of the trouble that led to the prosecution, there was a resort, with a saloon and a dancing floor as a part of the attractions of the place. On the night of October 1, 1910, a number of young men from Tell City and others from Troy were there. Appellant, from the first-named place, had engaged in a dance with a girl, and at the end of it was deprived of the privilege of sitting by her side by the greater quickness of one Berger from Troy, who crowded between appellant and the girl. This caused offense to appellant, and while trouble did not ensue at once, evidently some feeling arose between the young men from the two towns. Profane epithets were exchanged between individuals of the two crowds afterwards, and perhaps some threats. About 11 o'clock at night, appellant approached Berger and Conrad Smith, also from Troy, the victim of appellant's alleged felonious assault, and the latter was cut by a knife in the hands of appellant, and was severely injured and his face marred thereby. It is appellant's claim that he acted in self-defense, to protect himself from great bodily harm at the hands of Smith, that he acted under the fear that the young men from Troy were acting with the common pur-

pose of doing him great injury, and that the testimony of this witness should have been admitted.

The question propounded to the witness is so general as to make it doubtful whether it called for testimony from the witness that was at all pertinent to the matter being tried. The witness had not testified that he was at the resort at all. What the witness had heard, if anything, might have been from persons entirely unconnected with appellant's trouble with Smith, and the trouble the Tell City boys were to be caused, if any, may have been wholly disconnected with, and not at all relevant to the inquiry into the trouble between appellant and Smith. To save a question on the exclusion of evidence for review in this court, a pertinent and proper question must first be put to the witness. But aside from this, there are good reasons for sustaining the ruling of the trial court. So far as the offer to prove what Smith said is concerned, it may be said that immediately following the court's ruling excluding the offer, the judge asked the witness whether anything was said by Smith, and he answered: ''No, sir; I never heard him say anything,'' so there could have been no harm to appellant, as the witness's testimony as to Smith's utterances would not have made good the offer.

Moreover, up to the time in the trial when this testimony was offered, there had been no evidence given of any attack or overt act on the part of Smith on or towards appellant, and this was necessary to make Smith's threats competent. Gillette, Crim. Law (2d ed.) §242; Underhill, Crim. Ev. (2d ed.) §326; *Leverich* v. *State* (1886), 105 Ind. 277; *Ellis* v. *State* (1899), 152 Ind. 326.

If it can be said that the question and the offer to prove were sufficient to show that it was intended to produce testimony of threats upon the part of Berger, Paulin, Gates and others of the Troy crowd against appellant, yet it was shown by the record that at the time this offer was made no evidence had been produced to establish *prima facie*, directly or circumstantially, that there was a

conspiracy on the part of the Troy crowd to do harm to appellant, or that the individuals composing that crowd were acting with common design against Malone, or any other one of the Tell City crowd. No offer on the part of appellant was made at that time subsequently to show such common purpose. It was therefore proper for the court to exclude the offered testimony. *Card* v. *State* (1887), 109 Ind. 415; *McKee* v. *State* (1887), 111 Ind. 378; *Freese* v. *State* (1903), 159 Ind. 597; Underhill, Crim. Ev. (2d ed.) §§490-494; 1 Elliott, Evidence §191.

Furthermore, it is perfectly obvious, from a glance at the offer in question, that it involves more conclusions than facts, and for that further reason the ruling of the court 4. was right. In disclosing the facts that he promises to introduce to establish the relevancy of the evidence offered, the facts themselves, and not the conclusions of the person making the offer to prove, should be stated. *Ross* v. *State* (1907), 169 Ind. 388.

Counsel for appellant also complains of the exclusion of similar testimony from Ed Cassidy, another witness offered in appellant's behalf, but it is enough to say that no 3. evidence sufficient to establish a concert of purpose and action on the part of the Troy crowd against Malone had been given at the time this witness was asked to testify to threats on the part of some of them.

The action of the trial court in refusing to give to the jury certain instructions requested by appellant is complained of as being erroneous. These instructions all related to 5. the question of self-defense, and it may be said that instructions two and three probably stated the law correctly. But error was not committed in refusing to give them, for the reason that, in substance and in legal effect, instruction six, given by the court of its own motion, and instruction one, given at the request of appellant, covered the same ground and were quite as favorable to appellant as the law justifies. The rule is too familiar to require the

support of the citation of authorities, that it is not error to refuse to give requested instructions which are substantially the same as those given. In instruction two the court was asked to state, in substance, that a person in the reasonable exercise of his right of self-defense would be justified in killing his assailant, provided he use no more force than reasonably appears to him at the time, under all the facts and circumstances, to be necessary. In instruction one, given by the court at the request of appellant, the jury was told that one attacked may use such force as he may reasonably think necessary to repel the attack, to the extent of taking the life of his assailant. There can be no difference between the two terms "reasonably appear to him," and "he may reasonably think," in the connection in which they are used.

The grounds of complaint of the court's action in refusing to give instruction three are that by it the jury would have been given to understand that it might take into consideration the "situation and apparent surroundings" of appellant, in determining whether he believed himself to be in danger of loss of life or great bodily harm, and that the question of the necessity of his using force to protect himself was to be determined from his standpoint at the time and under all the existing circumstances. In instruction six, given by the court of its own motion, and in instruction one, requested by appellant, the jury had been well instructed generally as to appellant's right of self-defense. It had been told, in part, that if he was assaulted in such a manner as to lead him to believe himself to be in danger of suffering great bodily harm, he might repel force without retreating; that he might use such force as he reasonably thought necessary to repel the attack, and that he might, if he believed it necessary, under the circumstances, to avoid danger to his life or great bodily harm to himself, take the life of his assailant, and finally the jury was told that it was for it to say, from all the facts and circumstances in evidence

before it, whether appellant had acted in reasonable self-defense. All this is gathered from the instructions given. Instruction three would not have put the rights of appellant in these particulars in a more favorable light.

Instructions four and five, requested by appellant and refused by the court, attempted to apply the law of self-defense specifically to the facts of the case on which 8. appellant relied for his defense. It is true, as appellant claims, that when instructions of the court in a case of this kind are abstract and general, it is error to refuse to give, upon proper request, instructions specifically and correctly declaring the law applicable to the facts claimed to be proved, and in relation to which material evidence has been given. *Carpenter* v. *State* (1873), 43 Ind. 371; *Fleming* v. *State* (1894), 136 Ind. 149; *Banks* v. *State* (1901), 157 Ind. 190; *Eby* v. *State* (1905), 165 Ind. 112; *Dunn* v. *State* (1906), 166 Ind. 694.

Without prolonging this opinion, it is enough to say that instruction four did not correctly apply the law to the facts assumed to have proved, and that instruction five, included in its hypothesis facts which there was no evidence to establish, and the court therefore properly refused to give each of them.

A further cause for a new trial was alleged newly-discovered evidence, and in support of the motion for a new trial for this cause appellant presented his own affidavit and those of Will Kincade, Cleve Gelardin and Bert Severn, all of whom had been produced as witnesses and testified in his behalf on the trial resulting in the verdict from which the appeal is taken. It is very doubtful if appellant has made a showing of proper diligence to entitle him to a new trial on the ground of newly-discovered evidence, but it is not necessary to determine that question. The evidence alleged to be newly found is cumulative, and not such as to authorize a new trial. On the trial appellant

testified, and the fact was nowise controverted, that just at the moment before he struck Smith the blow that caused the prosecution of this case, some one slipped an open knife into his hand, and that it was this with which he cut Smith. In the showing made by the affidavits in support of this cause for a new trial, it is shown that the person who did this was Kincade, and it is promised that on another trial he will so testify. We cannot see how this would change the case made against appellant or lend support to his defense. The question whether he used the knife put into his hand in self-defense could hardly be affected by the fact that Kincade or another put it there. It could add nothing material to the established fact in evidence in this trial that some one had placed a knife in his hand. Who had done so was wholly immaterial. The sole effect of this testimony would be to make Kincade legally as responsible for the cutting of Smith as appellant himself.

The affidavit of Gelardin states that he heard the Troy boys making remarks about the Tell City boys, and that some of them fussed with appellant who told them he did not want any trouble; that a short time before the cutting he heard a crowd of Troy boys make threats against appellant; that Berger and Smith were in the crowd, and that it was one of the two who made the threats. Galerdin had testified on the trial that he had heard Troy boys make remarks against Tell City boys on the night of the trouble. He was asked to state what was said, and when objection was made, there was no offer to prove what the remarks were or what he knew. As to the rest of the matters involved in his affidavit, similar testimony had been given by other witnesses on the trial. One Morris, a witness for appellant, had testified to threats made against appellant before the cutting by Smith and Berger. Two other witnesses for appellant testified that they had heard Smith say to Berger that the Tell City crowd was plotting against them, and that they must stand together. Malone had testified to

threatening words and actions towards him by members of the Troy crowd. Severn had testified as a witness for appellant, both on the trial and on a preliminary examination before a magistrate. On the trial he testified that he did not see the trouble. He was not asked about any threats. It is apparent that the alleged newly-discovered evidence is merely cumulative, and therefore not such as to entitle appellant to a new trial.

It is finally argued that the verdict is contrary to law, but no element of the State's case is pointed out as not being well sustained by some evidence. The evidence is sharply conflicting on the question of who began the fight and struck the first blow. A number of witnesses for the State testified that appellant was unprovoked by word or act by Smith, or by Berger who was near, at the time of the cutting. A number of witnesses testified that both Smith and Berger struck at appellant before he struck Smith with the knife. We cannot review the jury's function of determining which set of witnesses was most credible. It may be said that the testimony of appellant in his own behalf does not seem to be of the character, either as to substance or the way it was given, to impress a fair-minded jury with the justice of his claim that he was acting in self-defense.

The judgment of the lower court is affirmed.