HEDRICK *v.* STATE OF INDIANA.

[No. 28,707. Filed May 23, 1951.]

*Franklyn George,* of New Castle, for appellant.

*J. Emmett McManamon,* Attorney General; *John Ready O'Connor* and *George W. Hand,* Deputy Attorneys General, for appellee.

BOBBITT, C. J.—Appellant was indicted under § 10-3401, Burns' 1942 Replacement, for murder while attempting to commit robbery; was tried by a jury on his plea of not guilty; and was found guilty as charged and sentenced to the Indiana State Prison for and during his natural life.

Motion for a new trial was seasonably filed and overruled.

The only error assigned is that the court erred in overruling appellant's motion for a new trial.

Because of the nature of the question here involved, we believe it is appropriate to include a short statement of the circumstances surrounding the crime for which appellant was indicted and convicted. Appellant was involved with one Clarence Gorman and Lawrence Anderson in an attempted robbery which resulted in murder. The state attempted to show by certain acts and conversations between appellant and said Gorman and Anderson prior to the commission of the crime, including the act of driving his automobile and taking said Gorman and Anderson to and from the scene of the crime and his presence at its commission, that he (appellant) aided and abetted the perpetration of said crime, thereby making him a principal.

One of the theories of defense presented by appellant was that even though he might have participated in the planning of the robbery, as the state attempted to show, he abandoned his intentions and undertook to withdraw from participation therein in such a manner and under such circumstances as would relieve him from any responsibility for the crime of murder.

Among other things, appellant contends that the trial court erred in refusing to give certain instructions tendered by him covering the substance of his defense of abandonment and withdrawal from the crime, which are tendered instructions numbered 1 and 2.

Tendered instruction No. 1, which is a modification of the court's instruction No. 16, is as follows:

"Instruction No. 1

The court further instructs you that when two or more persons combine to commit a crime, each is criminally responsible for the acts of his confederates committed in the furtherance of the common design, and in contemplation of law the act of each is the act of all; except, however, that where one who had aided and encouraged its commission may nevertheless before its completion, withdraw all his aid and encouragement and escape criminal liability for the completed crime."

Tendered instruction No. 2 is as follows:

"Instruction No. 2.

The court further instructs you that in order to constitute an effective abandonment of a criminal enterprise, both as a matter of law and of common sense, there must be some appreciable interval between the alleged abandonment and the act from responsibility for which escape is sought. It must be possible for a jury to say that the accused had wholly and effectively detached himself from the criminal enterprise before the act with which he is charged is in the process of consummation or has become so inevitable that it cannot reasonably be stayed. The process of detachment must be such as to show not only a determination upon the part of the accused to go no further but also such as to give his co-conspirators a reasonable opportunity, if they desire, to follow his example and refrain from further action before the act in question is committed."

The record discloses some evidence of abandonment.

Clarence Gorman, a witness for the State, testified, in part, as follows:

(On direct examination.)

"Q. Anything else in there that is not true? (Referring to signed statement.)

"A. After we started over there, we started to come back and Anderson and I decided we had gone this far we would go through with the rest of it but Bud (Hedrick) didn't want to he wanted to chicken out, he wanted to go on home.

"Q. But he did go on with you?

"A. Yes, because he had to.

(On cross examination.)

"Q. Isn't it true that he turned the car around and went back?

"A. Yes.

"Q. What was the matter with the car?

"A. It didn't sound right, it was leaking oil.

"Q. What was said there when you turned around?

"A. He said it didn't sound right and he was going back home and Anderson was in the back seat and had a gun in his hand and we told Hedrick just to go ahead and take us to Shirley, he had come this far and we would take him the rest of the way with us.

"Q. Did you observe Francis' countenance?

"A. Yes, he was afraid of me, I had a gun too.

"Q. Did he show any fear there?

"A. Yes, he did.

"Q. What did he (Anderson) say to him?

"A. He laid the gun across the front seat and said: 'You have come this far, you are going the rest of the way.' So we made him turn around and go to Shirley.

"Q. What did you have him do when you got there?

"A. We had him take us where we wanted to go and made him get out of the car with us.

"Q. Did he want to stay in the car?

"A. Yes, but I was afraid he would sneak out on us.

"Q. What did he do?

"A. Just stood there.

"Q.  Did he have a bandana handkerchief?

"A.  No.

"Q.  Did he have anything in his hand?

"A.  No.

"Q.  Did you go up to the door?

"A.  Yes.

"Q.  What did you observe about him?

"A.  He wanted to know what coming off and I told him to be quiet. He still wanted to stay in the car."

Appellant (defendant) testified on direct examination, in part, as follows:

"Q.  Did you have any difficulty with your car?

"A.  I told them my car was not working right and I didn't want to go over there anyhow.

"Q.  What happened to your car?

"A.  It started acting up and I stopped and turned around and started back.

"Q.  How far did you go back?

"A.  About a mile and a half.

"Q.  How far were you from Shirley?

"A.  A long ways from Shirley, just a short ways off 67.

"Q.  When you turned around and started back, was there any conversation had?

"A.  Gorman was not saying anything but Anderson started protesting immediately.

"Q.  What did he say?

"A.  He said he had gone this far he was going all the rest of the way.

"Q.  Was that all the conversation?

"A.  No, he was cussing me and said I was a coward and lacked guts and he said: 'By Golly, you are going the rest of the way.'

"Q.  Did he say 'By Golly'?

"A.  No sir, he took the name of the Lord in vain.

"Q.  Were you afraid?

"A.  Yes.

"Q.  Did you protest?

"A.   I told him I was scared, and didn't want to have anything to do with it and I was going back to Indianapolis. He started pounding on the back of the seat and that is when he said 'By Golly, you are going the rest of the way.'

"Q.   Did he say 'By God'?

"A.   Yes.

"Q.   Did Gorman say anything at that time?

"A.   Gorman said: 'You had better come on Bud, we have gone this far, we had better go on.'

"Q.   Were you afraid?

"A.   Yes, I was afraid more by the minute, I didn't have anything to defend myself, so I turned around.

"Q.   And you came into Shirley?

"A.   Yes.

"Q.   Did you know the way into Shirley?

"A.   They directed which way they wanted me to go.

"Q.   You went the way they wanted to go?

"A.   Yes.

"Q.   What did you do then?

"A.   Parked the car. I wanted to sit in the car and told them I didn't want to go on up to the house and Gorman or Anderson one said: 'You are not going to stay here and then run off and leave us.' 'You are going to come on and go with us.' I refused to take the tape or handkerchief.

"Q.   Did you intend to participate in any way?

"A.   No, I even wanted to sit in the car and one of them said No, they was afraid I would run off and leave them."

Where the substance of an instruction which is refused is covered by one given, such refusal is not reversible error. *Koerner* v. *The State* (1884), 98 Ind. 7, 24; *Kocher* v. *State* (1920), 189 Ind. 578, 582, 127 N. E. 3; *Beneks* v. *State* (1935), 208 Ind. 317, 328, 196 N. E. 73; *Mandich* v. *State* (1946), 224 Ind. 209, 215, 66 N. E. 2d 69.

Appellee contends that instructions numbered 17, 18, 19 and 20, to the effect that defendant should not be found guilty unless there was proof beyond reasonable doubt that he was acting in concert with Gorman and Anderson in the commission of the crime charged, covered the "converse of abandonment" and were sufficient to cover the substance of appellant's tendered instructions numbered 1 and 2. We cannot agree with this contention.

Appellee further contends that the court's instructions numbered 21 and 22, which are as follows:

"Instruction No. 21.

If a person is compelled to commit a crime by threats of violence sufficient to induce a well grounded apprehension of death or serious bodily harm in case of refusal, this excuses him. Such well grounded apprehension would be deemed to exist when the defendant honestly believes, and has reasonable ground to believe that he is in danger of losing his life or receiving bodily harm.

"The question of the existence of such danger can only be determined from the standpoint of the defendant at the time, and under all the evidence, you have a reasonable doubt as to whether the defendant acted under such fear, then your verdict should be for the defendant.

"Instruction No. 22.

The law will not excuse a criminal act because committed under the influence of fear unless it appears that fear was founded upon reasonable ground. No duress will excuse from punishment unless it be by actual compulsion and use of force.

"The duress of compulsion must consist in such force exercised towards the person as put him in present fear of death or great bodily peril.

"Threats of a future injury are no excuse. No man from fear in some future consequence to himself has a right to make himself a party to the commission of crime,"

were sufficient to "comprehend and include" the question of abandonment. While these instructions are sufficient to cover the subject of duress, we do not deem them sufficient to cover the substance of appellant's tendered instructions numbered 1 and 2. Duress and repentance and withdrawal, (abandonment) are different defenses and an instruction on one cannot supply the omission of an instruction on the other where there is evidence in the record as to both.

One who is a party to a plan or design to commit a crime may abandon the idea and withdraw from the plan or design in such a manner and under such circumstances as to avoid liability for its commission. *Stephens* v. *The State* (1886), 107 Ind. 185, 189, 8 N. E. 94; *State* v. *Allen* (1879), 47 Conn. 121; *Hyde* v. *United States* (1912), 225 U. S. 347, 56 L. Ed. 1114, 32 S. Ct. 793; 15 Am. Jur., Criminal Law, § 333, p. 22; 22 C. J. S., Criminal Law, § 94, p. 165.

We believe appellant's tendered instructions numbered 1 and 2, while they are not model instructions, when read together state the law involved with sufficient accuracy to properly serve the purpose for which they were tendered. We also deem the evidence here sufficient to justify the giving of the requested instructions. 23 C. J. S., Criminal Law, § 1313, p. 913.

The rule here applicable is stated in *Ewbank's Ind. Criminal Law* (2d ed.), § 625 at p. 439 and is as follows:

"A party has a right to insist that the court shall instruct the jury specifically on all legal questions necessary to enable them to reach a true verdict, and to have the instructions made so specific as to apply to the facts of the particular case as developed by the evidence."

See also: *Carpenter* v. *The State* (1873), 43 Ind. 371, 373; *Agee* v. *The State* (1878), 64 Ind. 340, 343, 345;

*Parker et al.* v. *The State* (1894), 136 Ind. 284, 292, 35 N. E. 1105; 23 C. J. S., Criminal Law, § 1199, p. 750.

While this court will not order a reversal for errors which in no way prejudice the substantial rights of the appellant,[1] we cannot weigh the evidence for the purpose of attempting to determine that, had the requested instructions been given, the jury would have reached the same result or that appellant's interests were not prejudiced by the refusal of the court to give such instructions. *Beneks* v. *State* (1935), 208 Ind. 317, 329, 196 N. E. 73, *supra*.

There was, as we have heretofore indicated, evidence introduced which presented the question of appellant's repentance or abandonment of the crime with which he was charged. Under these circumstances it was his right to have the jury instructed upon the law pertaining to that subject, when he so requested, and it was reversible error for the court to refuse to give appellant's requested instructions numbered 1 and 2. *Dunn* v. *State* (1906), 166 Ind. 694, 702, 78 N. E. 198; *Carpenter* v. *The State* (1873), 43 Ind. 371, *supra; Diblee* v. *State* (1931), 202 Ind. 571, 575, 577, 177 N. E. 261; *Malone* v. *State* (1911), 176 Ind. 338, 345, 96 N. E. 1; *Eby* v. *State* (1905), 165 Ind. 112, 117, 74 N. E. 890; *Sutherlin* v. *The State* (1897), 148 Ind. 695, 705, 48 N. E. 246; *Pierce* v. *Clemens* (1943), 113 Ind. App. 65, 46 N. E. 2d 836; 23 C. J. S., Criminal Law, § 1190(a), p. 731.

It is not necessary for us to decide the other questions raised by appellant's motion for a new trial as they are not likely to occur in a retrial of the case.

---

[1] *Medly* v. *State* (1915), 183 Ind. 660, 661, 110 N. E. 58; *Hay* v. *State* (1912), 178 Ind. 478, 485, 98 N. E. 712; *Beneks* v. *State* (1935), 208 Ind. 317, 329, 196 N. E. 73, *supra;* Ewbank's Criminal Law (2d ed.), § 605, p. 422; Section 9-2320, Burns' 1942 Replacement.

The judgment of the trial court is reversed with instructions to sustain appellant's (defendant's) motion for a new trial and for further proceedings in accord with this opinion.

NOTE.—Reported in 98 N. E. 2d 906.