MANUEL MIRELES, JR. v. STATE OF INDIANA.

[No. 1271S398. Filed August 22, 1973.]

*Joseph A. Noel, David H. Williams, Noel, Noel, Williams &
Scruggs,* of Kokomo, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,*
Assistant Attorney General, for appellee.

ARTERBURN, C.J.—This appeal is from a conviction for
involuntary manslaughter, IC 1971, 35-13-4-2 [*Burns Ind.
Ann. Stat.* § 10-3405 (1956 Repl.)], after a trial by jury in
the Grant Circuit Court, the Honorable A. Morris Hall pre-
siding. Appellant contends that the trial court committed re-
versible error when it failed to adequately instruct the jury
as to the elements of involuntary manslaughter.

On April 23, 1971, appellant was charged by indictment with
first degree murder by shooting and killing one Roger Rod-
riquez with a shotgun. Appellant pleaded not guilty, and a
jury trial was begun an July 19, 1971. After both sides had
rested, the court submitted to both the prosecution and defense
a list of proposed instructions. The court proposed to instruct
the jury that it might alternatively find appellant guilty of
second degree murder, voluntary manslaughter, or involuntary
manslaughter. Further, the court proposed the following
instruction on involuntary manslaughter:

> "The statute of the State of Indiana defining the crime
> of involuntary manslaughter, which is another of the de-
> grees of homicide covered by the indictment, reads as
> follows: Whoever kills any human being without malice,
> expressed or implied involuntarily but in the commission
> of some unlawful act, is guilty of involuntary manslaughter
> and on conviction shall be imprisoned in the state prison
> for not less than one nor more than ten years."

Appellant objected to the court's instruction as given by stating:

> "The term unlawful act is not defined nor is any law or statute provided by the instructions which are given to the jury which the state claims the defendant violated which could make him guilty of involuntary manslaughter."

The objection was overruled, the jury was so instructed and they returned a verdict of guilty of involuntary manslaughter. Appellant now urges on appeal that the trial court erroneously instructed the jury on this offense.

The method of instructing the jury concerning the law applicable to a criminal case is provided for by statute, IC 1971, 35-1-35-1 [*Burns Ind. Ann. Stat.* § 9-1805 (1956 Repl.)]. The statute divides the responsibility and burden of providing these instructions between the trial court itself and the attorneys participating in the trial. *Burns* § 9-1805(5), states:

> "In charging the jury the court must state to them all matters of law which are necessary for their information in giving their verdict."

However, *Burns* § 9-1805 (6) places the burden of submitting any additional instructions desired by either the prosecution or defense on the respective attorneys:

> "If the prosecuting attorney, the defendant or his counsel desires special instructions to be given to the jury, such instructions shall be reduced to writing, numbered and signed by the party or his attorney asking them, and delivered to the court before the commencement of the argument."

The offense with which we are concerned here has three main elements. Involuntary manslaughter as defined in IC 1971, 35-13-4-2 [*Burns Ind. Ann. Stat.* § 10-3405 (1956 Repl.)] includes (1) the killing of a human being, (2) involuntarily and without malice, (3) but in the commission of some unlawful act.

The precise issue before us is whether or not the court

should have elaborated the meaning of the term "unlawful acts." We think that the average juryman, the man on the street, knows what is meant by the words "unlawful act." Moreover, the jury is entitled to request further instructions from a judge. Furthermore, *Burns* § 9-1805 (6), *supra,* has been interpreted to mean that if a party wants a more specific definition of a term he should not merely object to the court's proposed instruction, but tender a "special instruction" to cover his special situation. This long-standing rule was recently reiterated by the Court of Appeals: ". . . the Appellant was required, under our case law, if he desired a fuller statement of the law to be made, to have tendered such instructions as would have correctly expressed a more complete statement of the law." *Davison* v. *Williams* (1968), 142 Ind. App. 402, 410, 235 N. E. 2d 90, 95. So, in *City of Terre Haute* v. *Deckard* (1962), 243 Ind. 289, 183 N. E. 2d 815, appellant's mere objection that the court's phrase "circumstantial evidence" was inadequate was held not dispositive because appellant did not tender an instruction correctly expressing the more complete statement of the law which the appellant wished. See also, *McCague* v. *New York Central & St. Louis Railroad Co.* (1947), 225 Ind. 83, 71 N. E. 2d 569; *Bowman* v. *State* (1934), 207 Ind. 358, 192 N. E. 755, 96 A. L. R. 522; *New York, Chicago and St. Louis Railroad Company* v. *First Trust and Savings Bank* (1926), 198 Ind. 376, 153 N. E. 761; *Flatters* v. *State* (1920), 189 Ind. 287, 127 N. E. 5; *Jenny Electric Mfg. Co.* v. *Flannery* (1912), 53 Ind. App. 397, 98 N. E. 424. The particular manslaughter instruction given in this case was adequate, *Kelley* v. *State* (1876), 53 Ind. 311, and it was not error for the court to refuse to attempt to make an endless list of "unlawful acts" with the attendant hazard of definitions, explanations, and omissions. The attorney for a party has some burdens and responsibilities in representing his client besides merely objecting. Not all the burden of representing a defendant can be thrust upon a trial court.

Appellant's other argument for reversal is that we should at this time reject the prevailing concept in Indiana that involuntary manslaughter is a lesser included offense within an indictment for first degree murder. Since we are not persuaded by appellant's arguments, we need only repeat what we have previously said about this issue:

"It thus appears by a long line of judicial precedent in this state that under a charge of murder a defendant may be found guilty of manslaughter although the statute defining the offense does not specifically fix manslaughter as a degree of any offense of murder. Regardless of the questioned soundness of the original reasoning of the above cases in view of the statutes since 1905, the law is now so well settled that we should not upset such well established precedent. The change, if desirable, must come from the legislature." *Barker* v. *State* (1957), 238 Ind. 271, 150 N. E. 2d 680, 683.

For the reasons stated, the judgment of the trial court is affirmed.

Givan, Hunter, JJ, concur; DeBruler, J., dissents with opinion in which Prentice, J., concurs.

### DISSENTING OPINION

DeBruler, J.—I find that I must disagree with the opinion of the majority in this case and I therefore dissent.

While the majority acknowledges that IC 1971, 35-1-35-1, being Burns § 9-1805, divides the responsibility of providing instructions in criminal trials between the trial court and the attorneys involved in the trial, it has failed in its opinion to enunciate on what grounds the responsibility is divided. The statute says that the trial court bears the responsibility of instructing on, "all matters of law which are *necessary* for their information in giving a verdict". (Emphasis added.) Burns § 9-1805(5). Attorneys, on the other hand, are required to submit any "special instructions" they wish to be read to the jury in addition to the necessary ones. Burns § 9-1805(6).

It is apparent from this statute that the trial court itself must bear the responsibility to instruct the jury on certain fundamental and basic issues in a criminal trial; those issues "necessary" for the jury in their deliberations. As we stated in *Hedrick* v. *State* (1951), 229 Ind. 381, 98 N. E. 2d 906:

> "A party has a right to insist that the court shall instruct the jury specifically on all legal questions necessary to enable them to reach a true verdict, and to have instructions made so specific as to apply to the facts of the particular case as developed by the evidence."

I can conceive of few instructions so necessary, fundamental and essential to a criminal trial (and hence under the clear mandate of Burns § 9-1805 (5) the responsibility of the trial court to give) as an adequate explanation of the necessary elements of the offense with which a defendant is charged.

> "We think it is self-evident that a jury cannot perform its duty of determining the guilt or innocence of a defendant accused of a crime unless they know the essential elements of the crime which he is alleged to have committed." *U.S.* v. *Rybicki* (6th Cir., 1968), 403 F. 2d 599.

The instructions in every criminal trial must necessarily include a definition or explanation of the crime charged in precise and accurate language, setting forth the essential elements of the offense. Instructions further defining the elements of the offense may not be necessary where the terms used in a statute are self-explanatory, but when the terms have a technical legal meaning not usually understood by a person of average intelligence the trial court must define those terms in order to carry out its responsibility to properly instruct the jury on the elements of the offense.

The majority today holds that the essential element of "unlawful act" in the crime of involuntary manslaughter (Burns § 10-3405) does not have a technical legal meaning but is a term which is familiar to "the man on the street". I believe, however, that the term is indeed one which has a spe-

cific, technical meaning as used in this statute. We have held that the "unlawful act" element of this offense must be an actual violation of a criminal statute. *Ensign* v. *State* (1968), 250 Ind. 119, 235 N. E. 2d 162. Involuntary manslaughter actually encompasses another criminal violation within itself. The breaking of another criminal statute is a condition precedent to the violation of Burns § 10-3405. The majority opinion, therefore, must be grounded on the assumption that the "man on the street" is aware not only of the entire range of criminal offenses, but also of the necessary elements of these offenses as defined by the Legislature in its statutes. I believe that the more realistic approach would be to recognize that the very technical and precise meaning which the term "unlawful act" has been held to have would not be properly understood by a jury unless they were instructed as to what they might consider an "unlawful act". Since there was no charge on this point, nor was it defined, explained or referred to in any of the other instructions given at the trial, the jury was left to speculate and improvise as to what would constitute this necessary element of this crime. An explanation of an offense should not leave jurors in ignorance of or leave them to their conjecture as to what constitutes the offense. Because the "unlawful act" in the offense must be a violation of some other criminal statute the jury should have been charged as to what possible violation of criminal law the evidence may have disclosed.

The majority, however, states that the defendant should have come forth with any additional instructions he might have desired and cites several cases in support of its position. It should be noted however that a number of these cases are civil in nature and we are, of course, dealing with a statute which is specifically concerned with the instructing of a jury in a criminal case. As I previously stated this statute places on the trial court the responsibility of giving the "necessary" instructions in a criminal case and I believe it apparent that

the elements of the offense charged fall within the definition of necessary.[1]

I trust the majority is aware of the import and possible consequences of its decision today. When it states that the average juryman knows what is meant by "unlawful act" as used in Burns § 10-3405, it has held that the "man on the street" has an assumed knowledge of the specific elements of every criminal statute enacted by the Legislature of the State of Indiana. If this be so then the specificity and number of instructions can be sharply reduced to a general charge to the jury that if they find the evidence at a trial has revealed any "unlawful acts" they should return a conviction. This opinion seems to be a return to the rather simplistic function of instructions best illustrated by the perhaps apocryphal story of Andrew Jackson's famous charge to the jury which he used as a trial judge:

"Do justice between these parties."

Prentice, J., concurs.

NOTE.—Reported in 300 N. E. 2d 350.

---

1. The majority's approach in this case would also result in the rather bizarre practice of requiring the defendant to decide what criminal statutes the evidence reveals he may have violated and submit instructions on those statutes to be read to the jury.