**STATE of Indiana, Plaintiff–Appellant,**

v.

**Richard Keith SMITH,
Defendant–Appellee.**

**No. 1–480A73.**

Court of Appeals of Indiana,
First District.

Sept. 23, 1980.

Rehearing Denied Nov. 17, 1980.

Theodore L. Sendak, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for plaintiff–appellant.

Harriette Bailey Conn, Public Defender, Kurt A. Young, Deputy Public Defender, Indianapolis, for defendant–appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

This is an appeal upon a reserved question of law under Ind.Code 35–1–47–2 from a judgment "directing a verdict" in favor of the defendant, Richard Keith Smith (Smith), at the close of the State's evidence upon the charge of attempted murder.

The appeal is sustained.

## STATEMENT OF THE FACTS

In the evening of August 10, 1979, Smith, and his uncle, Melvin Howell, were heavily engaged in a drinking bout in New Albany, Floyd County, Indiana. Though they had never had trouble before, for obscure reasons they fell to quarreling. While the parties dispute which one was the aggressor, it is admitted that Smith stabbed his uncle in the chest twice. The uncle then fled up the street, pursued by Smith, the latter shouting unintelligible epithets at his uncle as they ran. The uncle collapsed from weakness a block away and when Smith approached, his mood had changed.

He was remorseful and wept. Smith then dragged Uncle Melvin into the uncle's car, threw away the knife, "floored the accelerator," and sped up Pearl Street, his destination being the Floyd Memorial Hospital. At this point a policeman, Corporal Victor Steward, becomes the chronicler of events. He observed Smith going north on Bono Road where Smith's car crashed into a parked automobile. Stewart, with lights flashing and siren wailing, went in pursuit of the speeding Smith who, upon disentangling his car from the parked car, had accelerated at high speed, with lights out, down Conner Street. Smith finally arrived at the hospital without further recorded incident. Examination by physicians at the hospital revealed that Uncle Melvin had suffered two deep stab wounds between his ribs and close to his heart which had penetrated and collapsed both lungs. Astonishingly, Uncle Melvin survived his wounds and his transportation to the hospital and recovered to testify against his assailant.

Smith was charged with attempted murder under Ind.Code 35–41 5 1 and with battery. The record does not disclose the disposition of the battery count.

## ISSUE

After the State had rested its case in chief, the trial court sustained Smith's motion for a "directed verdict," more properly denominated as a judgment on the evidence under Ind. Rules of Procedure, Trial Rule 50 on the basis of abandonment. This appeal by the State upon a reserved question of law assigns the sole issue as follows:

> "Whether the trial court erred in ruling that appellee, Richard K. Smith, had abandoned the crime of attempted murder after he had inflicted serious knife wounds upon his intended victim."

## DISCUSSION AND DECISION

The statutes relevant here to define the offense of attempted murder are as follows:

Ind.Code 35–42–1–1 (Supp.1980):

> "A person who:
>
> (1) knowingly or intentionally kills another human being; . . .
>
> \* \* \* \* \* \*
>
> commits murder, a felony."

Ind.Code 35–41 -5 -1 (Supp.1980):

> "(a) A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. . . . an attempt to commit murder is a Class A felony."

The statute which provides the defense of abandonment is as follows:

Ind.Code 35 -41 3 10 (Supp.1980):

> "With respect to a charge under IC 35 41 2 4, IC 35 41 5 1, or IC 35–41–5–2, it is a defense that the person who engaged in the prohibited conduct voluntarily abandoned his effort to commit the underlying crime and voluntarily prevented its commission."

The thrust of Smith's argument, and seemingly the theory relied upon by the trial court, is that after the stabbing, and after the uncle had collapsed and was at Smith's mercy, Smith abandoned the effort to commit the underlying offense of murder and voluntarily prevented its commission.

The State argues that the defense of abandonment is not available in a case of attempted murder where the defendant's attempt has resulted in the wounding of the intended victim. In such case, the "effort to commit the underlying crime" has been completed and cannot be abandoned.

The Indiana Criminal Law Study Commission Comments on Ind.Code 35 -41 3 -10 reflect that this section is a codification of existing law as announced in *Hedrick v. State*, (1951) 229 Ind. 381, 98 N.E.2d 906. West's AIC 35 -41 -3 10. In *Hedrick, supra*, the court approved instructions relative to abandonment by one of a group of participants. Those instructions essentially said that where one has aided and encouraged

the commission of an offense, he may, nevertheless, before completion of the offense, withdraw all his aid and encouragement and escape criminal liability for the completed offense. To constitute abandonment, there must be some appreciable interval between the alleged abandonment and the act. The defendant must have effectively detached himself from the criminal enterprise before the act with which he is charged is in the process of consummation or has become so inevitable that it cannot reasonably be stayed. The process of detachment must be such that it will not only show a determination upon the part of the accused to go no further, but also give his co–conspirators a reasonable opportunity, if they desire, to follow his example and refrain from further action before the act in question is committed.

The rule in *Hedrick, supra,* was followed in *Harrison v. State,* (1978) Ind., 382 N.E.2d 920, and *Barnes v. State,* (1978) Ind., 378 N.E.2d 839. In *Barnes, supra,* the court further pointedly stated that in order for the defendant to validly assert the defense of abandonment, it must be shown that his renunciation of the criminal plan occurred both voluntarily and *prior* to the time when the criminal act was completed.

The views expressed in *Hedrick, Barnes,* and *Harrison, supra,* find support in textbooks and from the drafters of the Model Penal Code.

"Attempted murder cannot be purged after the victim has been wounded, no matter what may cause the plan to be abandoned. And probably the same is true after a shot has been fired with intent to kill. On the other hand, although a criminal plan has proceeded far enough to support a conviction of criminal attempt, it would be sound to recognize the possibility of a *locus penitentiae* so long as no substantial harm has been done and no act of actual danger committed. And there are indications that such a position will receive legal recognition, such as this recent dictum:

'Abandonment is a defense if the attempt to commit a crime is freely and voluntarily abandoned before the act is put in process of final execution and where there is no outside cause prompting such abandonment ....'"

R. Perkins, *Perkins on Criminal Law* 590 (2d ed. 1969) (Footnote omitted, most emphasis removed.)

Professor Perkins does not stand alone in his view that at least some attempted murders cannot be abandoned:

"Assuming a defense of voluntary abandonment, does there come a point at which it is too late for the defendant to withdraw? Obviously there must be, for it would hardly do to excuse the defendant from attempted murder after he had wounded the intended victim or, indeed, after he had fired and missed. It might even be argued that it is too late whenever the defendant has taken the last proximate step, for at that point his dangerousness is not rebutted by the withdrawal. On the other hand, as the Model Penal Code draftsmen point out, recognizing withdrawal, even after the last proximate act has occurred will encourage desistance at a time when such encouragement is most important." (Footnotes omitted.)

W. LaFave, A. Scott, *Handbook on Criminal Law,* 451 (1972).

Discussion of the issue can be found in Model Penal Code § 5.01, Comment, p. 72 (Tent.Draft No. 10, 1960). There it is said:

"On balance, it is concluded that renunciation of criminal purpose should be a defense to a criminal attempt charge because, as to the early stages of an attempt, it significantly negatives dangerousness of character, and, as to later stages, the value of encouraging desistance outweighs the net dangerousness shown by the abandoned criminal effort. And, because of the importance of encouraging desistance in the final stages of the attempt, the defense is allowed even where the last proximate act has

occurred but the criminal result can be avoided–*e. g.,* where the fuse has been lit but can still be stamped out. If, however, the actor has gone so far that he has put in motion forces which he is powerless to stop, then the attempt has been completed and cannot be abandoned. In accord with existing law, the actor can gain no immunity for this completed effort (*e. g.,* firing at the intended victim and missing); all he can do is desist from making a second attempt." (Footnote omitted.)

See also 22 C.J.S. *Criminal Law* § 76 (1961).

■ In summary, abandonment must occur before the crime is completed or the harm is done. In this case the offense charged was attempted murder which is completed "when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward the commission of the crime." Ind.Code 35–41–5–1. The offense here was completed with the first thrust of Smith's knife. This was followed by a second stabbing and further pursuit of the uncle with the knife. Two attempts were completed and Smith abandoned the third attempt. Remorse, common to many who are imprisoned for crime, is not abandonment. Here, abandonment came too late.

The trial court erred in entering a judgment for the defendant at the close of the State's case–in–chief. The appeal is therefore sustained.

ROBERTSON, P. J., and RATLIFF, J., concur.